## Staunton.

## CLARK AND ANOTHER V. REYNOLDS.

### September 17, 1919.

1.  PRIVATE WAYS—*Prescription—Case at Bar.*—When the vendee of
    land purchased from his vendor, the vendor's predecessor in
    title still owned the land between that purchase and the public
    road, and there was a private road leading from the vendor's
    land through the land of his predecessor in title to the public
    road. At that time the vendor and his predecessor in title
    pointed out this road to the vendee and told him that it was
    his road. From that time on for forty years the vendee and
    his successors in title used the road without question from any-
    body, and to all substantial intent and purposes it was not used
    by any other persons except those owning or subsequently ac-
    quiring parts of the original land of the vendor's predecessor
    in title. For many years after the purchase by the vendee,
    vendor's predecessor in title remained the owner of the land
    and never raised a question as to the use of the right of way
    by the vendee or his successors. The father of the defendant
    in the instant case succeeded the vendor's predecessor in title
    as to the intervening land and continued to own the same for
    about twenty years, during all of which time he acquiesced in
    the use of the way by the vendee's successors in title. There
    was no foundation in the evidence for any contention that the
    use of the way was in a legal sense by permission or under a
    license.

    *Held:* Under this and other evidence, that the vendee's successors
    in title.had shown themselves entitled to a right of way by
    prescription.

2.  HEARSAY EVIDENCE—*Failure to Object.*—In a suit to enjoin de-
    fendant from interfering with the use of a private road or
    right of way through his premises, some of the statements of
    one of the complainants appeared to be based upon what her
    father and husband repeated to her as having been said to
    them by former owners of the land; but this portion of her
    testimony was elicited from her upon cross-examination, and
    was not made the subject of objection or exception either in
    the Supreme Court of Appeals or in the court below. Hearsay
    testimony not objected to is good.

3. WITNESSES—*Transactions with Deceased Persons.*—In a suit to enjoin defendant from interfering with the use of a private road or right of way through his premises, the testimony of a witness was a direct account of what he heard former owners of the land say in regard to the right of way. There was objection to his testimony on the ground that one of these owners was dead.

*Held:* That the objection was manifestly not well taken, as the witness was no party to the transaction, and had no pecuniary interest therein.

4. PRIVATE WAYS—*Existence of Other Access to the Land.*—In a suit to enjoin defendant from interfering with the use of a private road or right of way through his premises, there was evidence tending to show that there had formerly been and was still probably available to the complainants another uncontested right of way, and it was contended that this road was the route the complainants ought to use to the exclusion of the way in controversy.

*Held:* That as the way in controversy was a prescriptive right which implied an original grant, it was in no way dependent upon or affected by the fact that there may be other ways of reaching the land. Furthermore, the right of way suggested as a substitute for the one in controversy, was one to which it was not shown that the complainants had any established legal right. Moreover, although the suggested substitute was somewhat shorter, parts of it were practically impassable for wagons and teams.

5. ESTOPPEL—*Private Way—Violation of Contract in Regard to it.*— In a suit to enjoin defendant from interfering with the use of a private road or right of way through his premises, defendant relied upon a contract in regard to the way introduced in evidence by the complainants over the opposition of defendant. It appeared from the record that defendant had plainly violated the terms of this contract, and therefore he could not be allowed to defend his position in the case at bar by the terms of a contract which he himself had disregarded.

6. PRIVATE WAYS—*Use.*—A landowner who has the right to use a private way in going to and from certain land, cannot go out of the limits of the way, nor use it as an easement for the benefit of any other tract of land than that for which it was originally established.

7. PRIVATE WAYS—*Extinguishment—Driving Out of Limits of Way.* —In the instant case there was evidence in the record tending to show that at times the use of the right of way in question had been abused by the complainants by driving out of the limits of the way and trespassing on the adjoining land of defendant.

*Held:* That such misuse could not extinguish the way. The defendant has an adequate remedy by action for damages, or, if occasion should demand, by a suit for injunction, to correct abuses in the exercise of the complainants' rights.

Appeal from a decree of the Circuit Court of Washington county. Decree for defendant. Complainants appeal.

*Reversed.*

The opinion states the case.

*L. P. Summers,* for the appellants.

*Jno. J. Stuart,* for the appellee.

KELLY, J., delivered the opinion of the court.

This suit in equity was brought by Mrs. Martha Clark and her son, William Clark, against Johnson Reynolds to enjoin and restrain him from interfering with their use of a private road or right of way through his premises. The relief prayed for was denied them by the circuit court, and the Clarks brought this appeal.

[1-3]    There is some marked conflict of testimony, but a careful consideration satisfies us that the weight of the evidence supports the following statement:  Shortly prior to November 13, 1874, Traynor Sullins, who was the father of Martha Clark and the grandfather of William Clark, acquired a small tract of land from John Thompson, and on the last-named date conveyed a part thereof containing eight and one-half acres to Samuel Clark, his son-in-law and the husband and father, respectively, of the complainants in this suit.  Subsequently, William Clark purchased (from Abel Clark, who in turn had purchased from Sullins) an additional four acres of the tract originally acquired by Sullins from Thompson.  This four acres is adjacent to and

immediately north of the eight and one-half acres.  Samuel Clark is dead.  His widow and children still own the eight and one-half acres and William Clark still owns the four acres.  Mrs. Clark resides upon the former tract, but William Clark resides upon a nearby piece of land acquired from another source.

The land bought by Sullins from Thompson lay within the exterior lines of a larger boundary which was and is traversed by one of the public roads of the county.  This larger boundary was owned by one A. R. Mallicote, and Thompson acquired from him a part thereof, which embraced the Sullins land.  The Thompson land, including the part conveyed to Sullins, all lay north of the county road, but did not extend to or touch it at any point.

When Sullins purchased from Thompson, Mallicote still owned the land between that purchase and the public road, and there was a private road leading from the Thompson land to the public road on the south.  At that time Thompson and Mallicote pointed out the road to Sullins, and told him that was his road.  This fact is shown by the testimony of Mrs. Clark and of Joseph Sullins, a son of Traynor Sullins, both of whom were familiar with the transaction and testified with convincing clearness and definiteness upon the subject.

Some of the statements of Mrs. Clark appear to be based upon what her father and husband repeated to her as having been said to them by Thompson and Mallicote; but this portion of her testimony was elicited from her upon cross examination, and was not made the subject of objection or exception either in this suit or in the court below.  Hearsay testimony not objected to is good.  *Newberry* v. *Watts,* 116 Va. 730, 736, 82 S. E. 703.  The testimony of Sullins was a direct account of what he heard Thompson and Mallicote say.  There was objection to his testimony on the ground that Mallicote was dead, but the objection

was manifestly not well taken. Joseph Sullins was no party to the transaction, and had no pecuniary interest therein.

Soon after the purchase of the eight and one-half acre tract of land by Traynor Sullins, he and his son-in-law, Samuel Clark, each built homes thereon and moved into the place over the road which led to it and which had been previously pointed out to them as theirs by Thompson and Mallicote. The road thus pointed out to and traveled by them is the road in controversy here, and from that time on for forty years they used the same without question from anybody, and to all substantial intent and purposes it was not used by any other persons except those owning or subsequently acquiring parts of the original Mallicote lands. There was more or less occasional use of the road by strangers, but no general use by the public in any such sense as rendered the use by the Clarks dependent upon or in common with its use by others. For many years after the purchase by Sullins, Mallicote remained the owner of the land lying to the south and extending to the public road, and never once raised a question as to the use of the right of way by Sullins or the Clarks. Phillip Reynolds, the father of Johnson Reynolds, the defendant here, succeeded Mallicote as the owner of this intervening land, and continued to own the same for about twenty years, during all of which time he likewise acquiesced in its use by the Clarks without complaint or question. There are some expressions in the testimony for the complainants to the effect that they used the road with the consent or permission of Mallicote and Reynolds, but it is abundantly clear from the testimony as a whole that the meaning of the witnesses was that this so-called consent and permission was merely such an acquiescence and recognition of a right as would be expected from and obligatory upon the owner of lands through which other persons were lawfully using an established right of way. There is no just foundation in the evidence for any

contention that the use of the way was in a legal sense by permission or under a license.

About three years before this suit was brought, Johnson Reynolds, the defendant, became the owner of the land over which the right of way passes. Shortly thereafter, unpleasantness arose between him and some of the Clarks, with the result that he finally put a lock on the gate opening from the county road into the private way, and denied, as he now denies in his answer, that complainants had any legal right to the way through his place.

Pending the difficulties which had arisen between Johnson Reynolds and the Clarks, Reynolds and David Clark, one of Mrs. Martha Clark's sons, agreed upon a settlement, and Reynolds signed a contract evidencing the same, which was introduced in evidence over his objection, but upon which he now seems to rely to some extent as sustaining his position in this case. This contract will be adverted to again, but is not in our view very material to a decision of the controversy.

Upon the foregoing facts, we have no difficulty in holding that the complainants have shown themselves entitled to a right of way by prescription. The roadway was in existence when Traynor Sullins bought from Thompson. Its origin was not shown. It may have been actually granted by Mallicote to Thompson, the grantor of Traynor Sullins. It is true that James H. Thompson, a son of John Thompson, testified that he did not remember that his father ever claimed a right of way over the road in question, but the testimony of this witness taken as a whole is altogether too vague, uncertain and non-committal to be entitled to much weight.

The case, so far as concerns the right of complainants to the road in question as a means of ingress and egress to and from the Sullins land, is controlled by well-settled and familiar principles which are fully discussed in a number of

comparatively recent cases decided by this court. *Reid* v. *Garnett,* 101 Va. 47, 43 S. E. 182; *Williams* v. *Green,* 111 Va. 205, 68 S. E. 253; *Kent* v. *Dobyns,* 112 Va. 586, 72 S. E. 139; *Witt* v. *Creasey,* 117 Va. 873, 86 S. E. 128; *Muncy* v. *Updyke,* 119 Va. 636, 89 S. E. 884.

[4] There was evidence tending to show that there had formerly been and was still probably available to the Clarks a right of way leading through what is now and has for many years been an abandoned lane to an open private, but uncontested, roadway extending down to the county road at the opposite side of the Clark land from that at which the controverted road enters the premises; and it is contended that this latter road is the route the Clarks ought to use to the exclusion of the other way. There are several very satisfactory answers to this contention. The Clarks clearly have a right to go the other way. This is a prescriptive right which implies an original grant in no way dependent upon or affected by the fact that there may be other ways of reaching the land. Furthermore, the right of way suggested as a substitute for the one in controversy, so far as it involves the use of the old, abandoned lane, is one to which it is not shown that the complainants have any established legal right. The lane has been closed for many years and could only be opened again as a matter of grace on the part of the owners of the land through which it passes. Still further, although the suggested substitute is a somewhat shorter way of going from the Clark land to the public road, parts of it are practically impassable for wagons and teams.

[5] Coming now to deal briefly with the contract mentioned above, David Clark, in an effort to settle the controversy with Johnson Reynolds, met with him in Abingdon, and the two agreed upon the following paper, which was signed, acknowledged and recorded, to-wit:

"March 16, 1914. This is to certify that Johnson Reynolds this day has agreed that Mrs. Martha Clark, the

widow of the late Samuel Clark, shall have a right of way on the old road that has been used by her and her heirs [*airs*] and the said David Clark and heirs of the said Martha Clark has this day paid the said Johnson Reynolds $5 on gates on said road and also the said David Clark is to help the said Johnson Reynolds to make the gates on said road and the said Johnson Reynolds that any one looking after the interest of the said Martha Clark shall have the same *privilege* to the said road. Witness the following.

"JOHNSON REYNOLDS. (Seal.)"

As already indicated, this contract was introduced in evidence, not by Reynolds, but by the complainants themselves, and its introduction was strenuously opposed by Reynolds. There seems to be some contention now on the part of Reynolds that this contract can be construed as a recognition on the part of Mrs. Clark and William H. Clark of the right of Reynolds to stop their use of the way. We do not take this view of the contract. While it is true that David Clark paid Reynolds $5 for the contract, the paper on its face shows a recognition of the old road, and although it does not purport to accord the Clarks the full rights to which they are entitled under their prescriptive right of way, it does give them very much wider rights than those which Reynolds is now willing to allow them. As a matter of fact, he has, according to the record, plainly violated the terms of this contract, and it is very certain that he cannot be allowed to defend his position in this suit by the terms of a contract which he himself has disregarded.

We are of opinion that the complainants are entitled to the relief prayed for in their bill, which is the establishment and protection of the right of way in question from the eight and one-half acres to the public road.

[6] It appears, however, from the evidence that William Clark, who, as shown above, does not live on the eight and one-half acre tract, has at times been using the private road

in question for the purpose of hauling to and from the land upon which he now resides, and that he proposes to continue such use of the private road when it may suit him. He has no legal right to do this. He has a right, as the owner of an undivided interest in the eight and one-half acre tract and as the sole owner of the four acres subsequently acquired by him from Sullins, to the use of the way in going to and from both of the last-named parcels of land (*Linkenhoker* v. *Graybill,* 80 Va. 839, 14 Cyc. 1190, 1191) ; but he cannot go out of the limits of the way, nor use it as an easement for the benefit of any other place than that for which it was originally established. *Springer* v. *McIntire,* 9 W. Va. 196; *Shaver* v. *Edgell,* 48 W. Va. 502, 37 S. E. 664.

[7] There is some evidence in the record tending to show that at times the use of the right of way in question has been abused by the complainants by driving out of the limits of the way and trespassing on the adjoining land. There is not, as we understand counsel, any contention that such misuse has amounted to an extinguishment of the way, and if there were such contention it could not be upheld. The defendant has an adequate remedy by action for damages, or, if occasion should demand, by a suit for injunction, to correct abuses in the exercise of the complainants' rights.

It follows from what has been said that the decree complained of must be reversed, and this court, proceeding to enter the decree which the lower court should have entered, will decree the establishment of the way, but will limit the same to its use as a passageway between the Sullins land and the road, and will enjoin and restrain William Clark from using it for any purposes in connection with his home place.

*Reversed.*