# Richmond.

## F. L. PRUITT v. J. W. SHAFER.

### November 15, 1923.

1. PRIVATE WAYS—*Prescription—Whether use of Road was by Permission or License or under Adverse Claim of Right—Case at Bar.*—In the instant case, a suit to enjoin defendant from obstructing the use by the complainant of a private way over the land of defendant, which complainant claimed had been acquired by prescription by his predecessors in title, the evidence showed that the use which had been had by plaintiff's predecessors in title, of the way in question, began and continued thereafter by the permission, or license, or special indulgence, of the respective owners of the alleged servient estate, and not under an adverse claim of right. There was direct evidence that the use of the road began by the permission of the then owners of the alleged servient estate, and there was no evidence, either direct or indirect, to the contrary. The use of the way by complainant was in common with others, and the preponderance of the evidence failed to show any act whatever by any owner of the alleged dominant estate indicating an adverse or hostile claim.

2. PRIVATE WAYS—*Prescription—Presumption of Grant—Permission to use Way.*—Where a way has been thus used openly, uninterruptedly, continuously, and exclusively for a period of more than twenty years, the origin of the way not being shown, there is a presumption of a right or grant from the long acquiescence of the party upon whose land the way is. The presumption, however, is merely *prima facie*, and may be rebutted, and where it is shown that the origin of the use of the way was by permission of the owner of the alleged servient estate, no presumption of a right or grant can arise.

3. EASEMENTS—*Prescription—Permission of Owner.*—An easement will not arise by prescription simply from permission of the owner of the servient estate, no matter how long the permissive use may continue. And having begun by permission, it will, in the absence of some decisive act on the part of the owner of the dominant estate indicating an adverse and hostile claim, continue to be regarded as permissive, especially when the latter's use is in common with its use by others.

4. PRIVATE WAYS—*Parol Grant—Termination of Grant on Breach of Condition.*—A so-called parol grant of an easement of private way was

conditioned upon the grantee continuing to keep up the gates and fences, which he did for a certain time.

*Held:* That the grant terminated upon the failure of the grantee or his successors to keep up the gates and fences.

Appeal from a decree of the Circuit Court of Rockbridge county. Decree for defendant. Complainant appeals.

*Affirmed.*

This is a suit in equity instituted in the latter part of 1919 by the appellant, Pruitt (hereinafter called plaintiff), seeking to enjoin and restrain the appellee, Shafer (hereinafter called defendant), his agents, etc., from obstructing or otherwise interfering with the use by plaintiff of a certain road over the land of the defendant, the right to the use of which, as a private right of way appurtenant to a certain tract of land owned by the plaintiff, the plaintiff claims was acquired by prescription by his predecessors in title to such land.

A preliminary injunction was granted, but upon the final hearing on the merits, upon the pleadings and a number of depositions taken and filed in behalf of both parties, the decree under review was entered which held "that the plaintiff is not entitled to the private right of way claimed in his bill," dissolved the aforesaid injunction and dismissed the bill.

It appears from the evidence that the land of the defendant consisted of a tract of about 300 acres; that it was owned from the close of the Civil war (1865) to 1882 by "the Jenkins;" that it was conveyed from the Jenkins owners to one Starke in 1882 under decree of court; that Starke owned and occupied it until 1898 when he conveyed it to the defendant, Shafer, who has owned and occupied it ever since that time. It also appears in evidence that the road in question was in exist-

ence in 1865, as a farm road upon the 300 acre tract of land; was then used as such by "the Jenkins;" and that it has been in existence and so used ever since by the successive owners of such land, with some immaterial changes in its location. None of these conveyances made any mention of the right of way in question.

The plaintiff's land consists of about eighty acres. It does not lie immediately adjacent to the land of defendant, but is separated from it by a narrow strip of land (some 200 yards in width), which at the time the suit was brought belonged to one Mohler, and prior to him to one Parsons. The first use of the road in question across the land of the defendant by any owner of the plaintiff's eighty acre tract of land appears from the evidence to have been begun by one Matt Hoge, who, being the owner of the eighty acre tract at the time, built a dwelling house on it several years after the Civil war (in 1869 as appears from the preponderance of the evidence), and then cut out a rough roadway from his dwelling house to the Parsons—afterwards the Mohler—strip of land, and obtaining access to the aforesaid farm road on the said 300 acre tract by using a road across the Parsons or Mohler land, then first began the use of the aforesaid farm road across the 300 acre tract, which it traverses for a distance of about one mile. The use of the last named road by Hoge was open, uninterrupted and continuous, as he had occasion therefor, with the knowledge and acquiescence of the respective owners of the 300 acre tract, from 1869 until Hoge's death in 1904, a period of thirty-five years.

Upon Hoge's death the eighty acre tract of land passed by deed from him to a Miss Byers (his wife's sister), who had lived in Hoge's family from 1869 (when he commenced to use the road in question as aforesaid), until Hoge's death. Miss Byers lived upon the eighty-

acre tract until 1911.    In 1911, or shortly afterwards
(the precise date not appearing in the record), Miss
Byers conveyed this land to one Lilley; Lilley subse-
quently (the precise date not appearing) conveyed this
land to one William Markham.    Upon the death of
William Markham (this date also not appearing) the
land descended to his heirs.    The plaintiff, Pruitt, ac-
quired a one-half interest in the land by deed of date
July 8, 1916, from one of these heirs, and the remaining
interest in the land from the other heir of Markham by
deed from a special commissioner of court dated Octo-
ber 25, 1919.    None of said conveyances of the eighty
acre tract made any mention of the right of way in
question so far as appears from the record before us.

Miss Byers, a witness for the defendant, testified that
the use by Hoge of the road in question originated in
verbal permission given him by the "Jenkins to go
through while he  (they) owned it" (the 300 acre tract).
That "after they sold it to Mr. Starke, Mr. Hoge asked
him permission the day he bought it and he told him to
go through the same as he had been going as long as he
kept the fence up and kept the gate fixed up and he
made the gate and everything;" and that that was all
the right that Hoge or the witness ever got to use the
road; that neither Hoge nor herself ever claimed a legal
right of way over the 300 acre tract; that "nobody
didn't have no right of way over it ever since I have
known it, and I have known it ever since 1859.    Have
been backward and forward and have been living there
right close;" and that Hoge kept up the gates according
to his arrangement with Mr. Starke.

Starke, who as aforesaid owned and occupied the 300
acre tract from 1882 to 1898, a witness for the plaintiff,
testified as follows:

"When I bought the land"  (the 300 acre tract), "it

was sold by court—when I bought it Mr. Hoge, if I recollect, stated to me that he had been using that road coming to the mill and going to the store, and he hoped I would not have any objection to him using it. I do not remember what answer I made him, but I gave him permission to use it for keeping up the gates and fences, which he did. I was very glad to have him use it because if there was any damage or anything gone wrong up there in the fields he would always tell me."

Later in his testimony this witness admitted that a short time before this suit was instituted, in answer to a question from the plaintiff on the subject, witness stated to plaintiff that witness and Hoge "never discussed the matter" of Hoge's use of the road, but that thinking the matter over since that time, witness thought they did possibly have a conversation about it;" that he could not be positive that they "had a conversation about it as to the permission," but that that was the witness' "impression" since refreshing his memory. That he did not know for which party he was summoned as a witness, but was under the impression that he was summoned as a witness for the defendant. That he came to the place at which his deposition was taken with the defendant, Shafer, and that they talked about the matter some, while on their way. That witness was not positive that Hoge asked his permission to use the road in question. That Hoge told witness that he would keep up the gates and keep them shut, and that he did that and that witness never objected to Hoge's use of the road; and that Hoge never claimed any legal right to use it while witness owned the 300 acre tract.

There is no evidence that Hoge ever made any express claim of right to use the road. A number of witnesses, both for the plaintiff and defendant, who knew him well, state that they never heard him make any such claim.

The only testimony in the case tending to support the inference that the use of the road by Hoge was accompanied with the claim of right to use it is the following: One of the witnesses for the plaintiff, Goolsby, testified that at one time while Starke owned the 300 acre tract, there were heavy drawbars across the road, put there by Starke, of which Hoge complained to Starke, telling Starke that he could not handle them and that "he would like for him (Starke) to get lighter lumber and put on the road, that he could not handle them heavy ones going in and out, and Mr. Starke made light sliding gates and put on," and that witness "did not hear any more complaint about it after that." That Hoge required Starke to take down the heavy drawbars "and put lighter material up there that he could handle, some lighter poles, if he was going to use poles." That "at that time there was about six or seven pairs of bars across the road and he told him he could not handle them unless they were lighter. He left some of them down once or twice right in his field and after he left them down once or twice Mr. Starke made one or two gates and the balance were of lighter poles." This witness also testified that Hoge told him that at one time Starke asked Hoge how the latter would like to have the road changed on a certain portion of it, and that Hoge told Starke that he (Hoge) "would not agree without there would be some show of getting some of them gates and drawbars off the road; he would like to have the road provided he would have a good road." But that that change in the road was not made.

Starke, on being recalled to the witness stand in behalf of the defendant, testified that he never knew of any complaint by Hoge of the heavy bars or other obstruction on the road—that Hoge never said anything to him on the subject.

Of the defendant, Shafer's, testimony, it is sufficient
to say that he testified that when he bought the 300
acre tract of land in 1898 he had a talk with Hoge on
the subject of the road in question; that Hoge then told
witness that he (Hoge) had no right to use the road but
had been using it by permission. That witness gave
Hoge permission to continue to use the road, without
any requirement of Hoge as to keeping up the gates or
bars. That Hoge accordingly used the road until his
death, riding, with witness' permission, through the
cornfield of witness for a year or two, during which wit-
ness had plowed up the road and closed it on one por-
tion of it. That none of the successive owners of the
eighty acre tract of land after Hoge claimed any right
to use the road until after the death of Markham. That
Markham, when he bought this land, came to witness
and asked permission to use the road and witness gave
him such permission. That Markham used the road
under such permission until he died. That when Mark-
ham died one of his sons claimed the right to use the
road. This, as it would seem from the evidence, was in
the year 1916, the evidence not being very definite, how-
ever, as to this date. That witness thereupon objected
to the use of the road by such son of Markham and
brought a suit for damages against the latter. What
the result of that suit was does not appear in evidence.
Shafer testifies, however, that this son moved away
from the land about this time, and we gather from the
evidence that no owner of the eighty acre tract has used
the road in question since that time. There is no evi-
dence in the record which conflicts with the testimony
of the defendant, Shafer, with respect to the use which
has been had of the road by the successors in title of
Hoge having been by Shafer's permission, and not un-
der any claim of right, down to the claim of right afore-

said of one of Markham's sons, about the year 1916. This use was not acquiesced in by the defendant and was terminated, either by the aforesaid suit for damages, or by the claimant moving away from the land about the time of the suit.

The evidence tends strongly to show that the owners of the Parsons or Mohler strip of land, and others, used the road in question by permission of the owners of the 300 acre tract during the same time that Hoge and his successors in title used the road as above stated.

The two tracts of land constituting the alleged dominant and servient estates do not appear from the evidence to have ever belonged to one and the same owner.

*A. Willis Robertson* and *John Dabney Smith,* for the appellant.

*Curry & Curry,* for the appellee.

SIMS, J., after making the foregoing statement, delivered following opinion of the court:

The questions presented for decision by the assignments of error will be disposed of in their order as stated below.

[1] 1. Does the evidence in the cause show that the use which has been had by the plaintiff's predecessors in title, of the road in question, by the owners of the alleged dominant estate as appurtenant thereto, began and was continued thereafter by the permission, or license, or special indulgence of the respective owners of the alleged servient estate, and not under adverse claim of right?

The question must be answered in the affirmative.

There is no controversy before us over the law of the

case, which is, indeed, well settled. The questions which are controverted before us are questions of fact.

There is direct evidence that the use of the road began by the permission of the then owner or owners of the alleged servient estate. There is no evidence, either direct or indirect, to the contrary.

[2] The plaintiff relies upon *Williams* v. *Green*, 111 Va. 205, 68 S. E. 253, and other Virginia cases to the same effect. In *Williams* v. *Green*, there was no evidence as to the manner in which the use of the ways originated, and the testimony showed the uninterrupted use of the way by the appellant and her predecessors in title for more than forty years and that appellant and her family had uninterruptedly and continuously used the way for more than twenty years. This court in that case said this:

"Where a way has been thus used, openly, uninterruptedly, continuously and exclusively for a period of more than twenty years, the origin of the way not being shown, there is presumption of a right or grant from the long acquiescence of the party upon whose land the way is. The presumption of a grant or adverse right is with us *prima facie* merely, and may be rebutted. *Nickols* v. *Ayler*, 5 Leigh (32 Va.) 546; *Freld* v. *Brown*, 24 Gratt. (65 Va.) 74; *Reid* v. *Garnett*, 101 Va. 47, 43 S. E. 182.

" 'In the absence of evidence,' as was said by the Supreme Court of the State of Pennsylvania, in *Worrell* v. *Rhoads*, 2 Wharton 427, 30 Am. Dec. 274, 'tending to show that the long continued use of the way may be referred to a license, or special indulgence, that is revocable, the conclusion is that it has grown out of a grant by the owner of the land and has been exercised under a title thus derived. The law favors this conclusion, because it will not presume any man's acts illegal. It is reasonable to suppose that the owner of the

land would not have acquiesced in such enjoyment for a long period when it was to his interest to have interrupted it, unless he felt confident that the party enjoying it had a right and title to it that could not be defeated. And besides seeing that it can work no prejudice to anyone excepting to him who has been guilty of great negligence, to say the least of it, public policy and convenience require that this presumption should be made, in order to promote the public peace and quiet men in their possession."

But in view of the evidence in the instant case showing that the origin of the use was permissive, the holding just quoted, that there is a presumption of a right or grant, has no application.

[3] Further: As said by this court in *Witt* v. *Creasey*, 117 Va. 872, at p. 876, 86 S. E. 128, 129: "An easement will not arise by prescription simply from permission of the owner of the servient estate, no matter how long the permission may continue. *Kent* v. *Dobyns* (112 Va. 586, 72 S. E. 139), *supra*, Jones on Easements, sec. 282. And having begun by permission, it will, in the absence of some decisive act on the part of the owner of the dominant estate indicating an adverse and hostile claim, continue to be regarded as permissive, especially when the latter use is in common with its use by others."

The evidence in the instant case shows that the use of the way by Hoge was in common with others. Moreover, the evidence in the instant case fails to show any act whatever by any owner of the alleged dominant estate indicating an adverse or hostile claim, except the testimony of the witness Goolsby, referred to in the statement preceding this opinion, concerning Hoge's attitude towards Starke while the latter was the owner of the alleged servient estate, and except the claim of

right to use the road made by one of the Markham sons, which was within about three years of the institution of this suit. Starke testified that Hoge never made known to him any such attitude as Goolsby testifies about. Starke's testimony has been severely criticised in argument for the plaintiff; but his frank admissions and his guarded and qualified statements with respect to what was said between him and Hoge so long ago (there being no one to contradict him if he had been more partisan and more positive and definite in his statements of what he may have said to Hoge, or Hoge to him—Hoge having been long dead), strongly impresses us with the truth of the substance of his testimony, as it doubtless did the court below. We are satisfied that the recollections to which the witness Goolsby testifies are of some utterances which he may have heard Hoge make, which were not made to Starke; which had likely become confused in the memory of the witness, and which as made may have been entirely capable of explanation consistently with the other testimony in the case tending to show that Hoge's use of the way continued until his death as it began, namely, by permission. Hence, we cannot regard the testimony of Goolsby as establishing any decisive act on the part of Hoge indicating an adverse claim of right to use the way.

Hoge's use of the way having continued until his death in 1904, and having been explained by the evidence, as we think, as having had its origin in permission, and as having been continued by permission, it is unnecessary for us to deal in detail with the use of the way by the subsequent predecessors in title of the plaintiff; since the whole of the time from the death of Hoge in 1904 to the institution of this suit in 1919 was less than the prescriptive period of twenty years.

[4] 2. Does the evidence show a parol grant of the easement of the right of way in question to Hoge as appurtenant to the land now owned by the plaintiff, under the holding on that subject of *Buckles* v. *Kennedy Coal Corporation,* 134 Va. 1, 114 S. E. 233?

The question must be answered in the negative.

The evidence shows that the use of the way originated in a mere personal privilege given to Hoge by "the Jenkins," and shows no consideration as emanating from Hoge therefor. The only parol grant of the easement, if it could be so called, disclosed by the evidence is that made to Hoge by Starke, when the latter became the owner of the servient tenement in 1882. The continuance of that grant was conditioned upon Hoge's continuing to "keep up the gates and fences," which he did, according to the preponderance of the evidence, until Starke sold the servient estate to the defendant, Shafer, in 1898. According to all the evidence in the case, neither Hoge nor any of his successors in title "kept up" the gates or fences after the defendant, Shafer, purchased the servient estate in 1898. The parol grant made by Starke therefore then terminated.

The decree under review will be affirmed.

*Affirmed.*