# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## J. A. WADE v. HUBERT S. MOORE, ET ALS.

September 25, 1924.

1. EASEMENTS—*Private Ways—Prescription—General Rule.*—In order to establish a right of way over the lands of another by prescription, it must appear that the use and enjoyment thereof by the claimant was adverse, under a claim of right, exclusive, continuous, uninterrupted and with the knowledge and acquiescence of the owner of the land over which it passes, and that such use has continued for a period of at least twenty years.

2. EASEMENTS—*Private Ways—Prescription—Presumption of Grant.*—Where a way has thus been used openly and uninterruptedly, continuously and exclusively, for a period of more than twenty years, the origin of the way not being shown, there is a presumption of a right or grant from the long acquiescence of the party on whose land the way is.

3. EASEMENTS—*Private Ways—Prescription—Presumption of Grant—Rebuttal of Presumption.*—The presumption of a right or grant from the use of a way over the land of another for twenty years is *prima facie* and may be rebutted by showing that the right of way originated in a permission, or a license, granted by the owner of the land for his neighbor to pass over it, or by showing that during the prescription period of twenty years the owner of the estate claimed to be servient denied the right of the owner of the dominant estate and converted the right of way into one by permission only.

4. EASEMENTS—*Private Ways—Prescription—"Permission."*—In the instant case, a suit to enjoin interference with and obstructing a private road, it was claimed that expressions used by two of the witnesses led to the inference that the roadway was used by the successive owners of the dominant estate by permission only. Such statements did occur in the testimony, but they were not supported by facts showing the actual granting of permission, and it was evident that the witnesses used the word "permission" in its ordinary and comprehensive meaning and not in its legal sense. The defendant and his predecessors in title may be said in a general way to have "permitted" the use of the right of way, whether or not its use was under a legal right.

5. EASEMENTS—*Private Ways—Prescription—Exclusive use.*—Exclusive use

in the law relative to the acquisition by prescription of a right of way, does not mean that the plaintiff must be the only one using the way, but exclusive means that the use is a proprietary use and not a use by the public generally. When there has been such a use for more than twenty years, the *bona fides* of the claim of right is established, and the owner of the land through which the way passes must rebut that presumption by showing permission or license from him or those under whom he claims, or denials or objections to such use under circumstances that will rebut the presumption.

6.  EASEMENTS—*Private Ways—Prescription—Interruption of Use—License—Case at Bar.*—In the instant case the way in question had been in use for a period of twenty-five years preceding its closing by the owner of the servient estate. At the time of its closing there had arisen a bitter personal enmity between the owners of the servient and dominant estates. But it did not appear that this trouble was connected with the use of the way in question. The evidence failed to disclose how the use of the way originated. After a year or more the difficulty between the owners was made up and the way was once more used by the owners of the dominant estate for many years before the present suit.

    *Held:* That it did not appear from the evidence that the resumption of the use of the way was under a license from the owner of the servient estate, and the facts were not sufficient to rebut the presumption of a right or grant.

7.  EASEMENTS—*Private Ways—Prescription—Other Means of Access.*—A right of way over the lands of another by prescription implies an original grant and is in no way dependent upon or affected by the fact that there may be other ways of reaching the land.

8.  APPEAL AND ERROR—*Burden of Proof—Correctness of Decree.*—On appeal the burden is upon the appellant to overcome the presumption in favor of the correctness of the decree below, and to satisfactorily show that there was error to his prejudice.

Appeal from a final decree of the Circuit Court of Halifax county, awarding an injunction at the suit of the complainants. Defendants appealed.

*Affirmed.*

The opinion states the case.

*Robt. A. Wade,* for the appellant.

*McKinney & Settle,* for the appellees.

CRUMP, P., delivered the opinion of the court.

This suit was brought by Hubert S. Moore and others (appellees here) against J. A. Wade to enjoin and restrain him from interfering with and obstructing their use of a private road or right of way through his premises. The relief prayed for was granted by the circuit court and defendant brought this appeal.

There is some conflict in the testimony, but after a careful consideration of all the testimony we are satisfied that the weight of the evidence supports the following general statement:

It appears that for many years before the Civil War, probably prior to 1820, Armistead Moore owned, and resided upon, a large tract of land in Halifax county adjacent to a tract then owned and occupied by John Edwards. A public road ran along the line of Edwards' land opposite the boundary line between him and Moore, so that Edwards' tract lay between the public road and the line between him and Moore. It was further shown that, in this situation, Moore and his family used, for a long period of years prior to the Civil War, a road or wagonway running from a point near the barns on Moore's land, not far from the residence occupied by him at that time, through the land of Edwards and out to the public road. This road was used by Armistead Moore and his family and farm hands and by persons visiting them for social and business purposes without interruption, except for a period of a year or more in 1865 or 1866, when the road was closed by Edwards under circumstances to be stated later. Armistead Moore died several years after the Civil War, the exact date of his death not being shown. The plaintiffs in this case, some of them being the grandchildren of Moore, took the property now owned

by them directly from, or under, Armistead Moore. The plaintiffs include parties owning three portions of the original tract owned entirely by Moore, Hubert S. Moore owning now the tract upon which the original residence of Armistead Moore was, and from which the said roadway originated; the other plaintiffs own two adjoining tracts and claim to have used and to use the said roadway through Edwards' land in hauling their farm products out to the public road.   John Edwards died apparently, from the testimony, some time between 1885 and 1890, and remained in possession of his tract of land up to his death.   It then passed to his son, Dick Edwards.   C. P. Carr purchased it from Dick Edwards.   Some fifteen years before the institution of this suit Carr sold the place to the defendant, Wade, who has been in occupancy of it ever since.

We think it is shown that this roadway used by Armistead Moore and his successors in title through Edwards' place has been used continuously, without interruption, and without anything passing between the owners, from time to time, of the dominant estate and of the servient estate, certainly since about 1867.   There is testimony by the defendant, Wade, and witnesses on his behalf, that the roadway was not in constant use, but we are obliged to conclude from the entire evidence that it is shown that this roadway, leading from the property now occupied by Hubert Moore, has been practically in constant and uninterrupted use by the plaintiffs at their option and without objection from the parties owning the Edwards property, from time to time, since a date certainly prior to 1870.

The question in the case is whether the plaintiffs are entitled to the right of way over the land now owned by the defendant, Wade, by prescription.

The law upon this subject in Virginia is fairly well settled.

[1] In order to establish a right of way over the lands of another by prescription, it must appear that the use and enjoyment thereof by the claimant was adverse, under a claim of right, exclusive, continuous, uninterrupted and with the knowledge and acquiescence of the owner of the land over which it passes, and that such use has continued for a period of at least twenty years. *Reid* v. *Garnett,* 101 Va. 47, 43 S. E. 182; *Williams* v. *Green,* 111 Va. 205, 68 S. E. 253.

[2, 3] Where a way has thus been used openly and uninterruptedly, continuously and exclusively, for a period of more than twenty years, the origin of the way not being shown, there is a presumption of a right or grant from the long acquiescence of the party on whose land the way is. This presumption of a grant or right is *prima facie* and may be rebutted by showing that the right of way originated in a permission, or a license, granted by the owner of the land for his neighbor to pass over it, or by showing that during the prescription period of twenty years the owner of the estate claimed to be servient denied the right of the owner of the dominant estate and converted the right of way into one by permission only.

It is claimed by the plaintiffs that, having shown a continuous use from about 1867 or 1868 until the institution of these proceedings, they had acquired a prescriptive right to the road. It is further claimed by them that the roadway existed for more than twenty years prior to the time its use was interrupted about 1865 or 1866 for a year or more, and that the interruption was after the prescription period had expired and the legal right to the use of the way existed.

It is contended on behalf of the defendant (appellant

here) that whatever may have been the relations of Armistead Moore, the ancestor of the plaintiffs, and John Edwards, prior to the time that Edwards closed the road for a year or more in 1865 or 1866, that closing amounted to an abrogation of any prior rights that existed, and when the use of the road was resumed it was only by permission of Edwards and, therefore, the right to the use of the road having originated in permission or license, a legal right to its use could not be acquired by prescription.

Without discussing further the relations that existed between the original owners prior to 1865, our conclusion, from all the testimony, is that the evidence is not sufficient to show that when Armistead Moore resumed the use of the way, about 1866 or 1867, it can be said to have been by permission of the owner in a legal sense.

The defendant, Wade, testified that when he bought his property from Carr he understood that the right of way existed by permission only, although nothing seems to have passed between himself and Carr with reference to the right of way at all. We think the evidence shows that the roadway plainly existed at that time, and its use by the plaintiffs and their predecessors in title was known or ought to have been known to Wade at the time he purchased the property.

[4] It is claimed by defendant also that expressions used by two of the witnesses for the plaintiffs lead to the inference that the roadway was used by the successive owners of the dominant estate by permission only. Statements of this character do occur in the testimony, but they are not supported by any facts showing the actual granting of permission, and it is. evident that the witnesses used the word "permission" in its ordinary and comprehensive meaning and not in its legal sense. The defendant and his predecessors in title

may be said in a general way to have "permitted" the
use of the right of way, whether or not its use was under
a legal right.

As was said by Judge Kelly, in *Clark* v. *Reynolds*, 125
Va. 626, on page 630, 100 S. E. 469: "There are some
expressions in the testimony for the complainants to the
effect that they used the road with the consent or per-
mission of Mallicote and Reynolds; but it is abundantly
clear from the testimony as a whole that the meaning
of the witnesses was that this so-called consent and per-
mission was merely such an acquiescence and recogni-
tion of a right as would be expected from and obligatory
upon the owner of lands through which other persons
were lawfully using an established right of way.   There
is no just foundation in the evidence for any contention
that the use of the way was in a legal sense by permis-
sion or under a license."

The evidence fails to disclose anything done or said
between the original owners, Armistead Moore and
John Edwards, or their successors in title and occupants
of the lands respectively, with reference to the right of
way and its use during the entire period of between
sixty and seventy years prior to the time this suit was
brought.   Neither Dick Edwards nor C. P. Carr, the
two owners of the Edwards tract between John Edwards
and the defendant, Wade, testified in the case.   Their
testimony would certainly have thrown light upon the
question of permission and the manner of use of the
roadway.   It may be that by reason of the death of
these parties, or otherwise, their testimony was not
available to either side; but in the period during which
they occupied the servient tract, from about 1885 to
1907 and 1908, the testimony without controversy
shows that this roadway was in constant and uninter-

rupted use, with the acquiescence of the owners of the servient tract.

[5] The testimony establishes the fact that the use of the roadway was exclusive, as applicable to a private right of way. *Muncy* v. *Updyke*, 119 Va. 636, on page 639, 89 S. E. 884, holds that exclusive use in the law, relative to the acquisition by prescription of a right of way, does not mean that the plaintiff must be the only, one using the way, but exclusive means that the use is a proprietary use and not a use by the public generally. It is further there held that when there has been such a use for more than twenty years, the *bona fides* of the claim of right is established, and the owner of the land through which the way passes must rebut that presumption by showing permission or license from him or those under whom he claims, or denials or objections to such use under circumstances that will rebut the presumption.

The evidence shows no objections to the use of the roadway during the above mentioned period of from sixty to seventy years by any of the owners of the servient tract, or denials of its use by them under such circumstances as will serve to rebut the presumption of the right by prescription accruing to the plaintiffs.

[6] Does the evidence show that about 1865 the occurrences that then took place between Armistead Moore and John Edwards lead to the conclusion that the use of the right of way when resumed was only by permission, or license, of John Edwards and, therefore, the use of the right of way originated in permission of the owner of the servient estate?

We think this question must be answered in the negative. The evidence shows, as already stated, that the roadway was used from the property of Armistead Moore, through the property of John Edwards, out to

the public road, most probably for a period of twenty-five years preceding its closing by Edwards about 1865. In that year, somewhere about the close of the Civil War, or some months, perhaps a year, afterwards, it appears that the friendly relations of Moore and Edwards were interrupted in some way which caused a bitter personal enmity between them. The cause of this estrangement does not appear in the evidence. Nor does it appear that the trouble between them had its origin in any way in connection with, or grew out of, the use of the right of way. It does appear that because of the trouble between these two neighbors Edwards barred the way through his place, and so for a time, estimated at certainly over a year, kept Moore from using it. That is the sole fact that is shown. What passed between the parties, whether there was a clear assertion by Moore of the right to use the road and a denial by Edwards of that right, we are unable to gather from the testimony. We infer that Edwards stopped his neighbor from going through because of personal feelings against his neighbor, and Moore stopped using the road because he did not desire personally for himself and his family and people to come in contact with Edwards. There is nothing in the evidence that throws any light upon the reason for obstructing the use of the road at that time, except the mere fact of bitter personal feeling between the parties. The evidence shows that most probably, almost certainly, at this time the roadway had been used by Moore for a period of upwards of twenty years with the acquiescence of Edwards, so that most probably at that time he had acquired a right to its use by prescription. The evidence fails to disclose how the use of the road originated between the two original owners of the lands, and affords us no light on that subject at all, but leaves it entirely to

conjecture. It appears that after a year or more Edwards and Moore again became friends and Moore resumed the use of the road. Why he did so, whether merely by permission of Edwards, or whether Edwards acquiesced in a right already acquired by Moore, we are unable to say from the testimony. It would appear to be just as probable that Moore simply refrained from using the road during the period of hostility between the parties, without any denial of the right to use it on the part of Edwards, and after they became friends Moore resumed the use of the road under a claim of right, as it is that at that time Edwards allowed the road to be used merely by his permission. It may be unfortunate for the defendant that owing to the long period of time that has elapsed the nearer facts cannot be shown. But this lack of evidence is accompanied by the fact that from that time on until the trouble out of which this present suit grew, in 1922, there was complete acquiescence on the part of Edwards and his successors in title to his property in the use of the roadway.

The presumption in favor of the plaintiffs in a case of this character of itself establishes a right, which can be defeated by the defendant only by showing and establishing on his part a defense which breaks down and rebuts that presumption. The facts to be gathered from the evidence in this case are not sufficient to establish the defense that the use of the road originated in permission granted by Edwards to Moore for its use in 1866 or 1867.

[7] It further appears from the evidence that in the period of a year or more, during which Armistead Moore and John Edwards were at odds, Moore used to some extent a roadway over his own property along another boundary fence between himself and Edwards, out to the public road. While the use of this roadway was

perhaps not entirely abandoned after the use of the road through Edwards' property was resumed, it was very seldom used, and was allowed to become almost impassable; and while available in a way from time to time for farming purposes as a rough roadway, we do not think that its existence affects the right acquired to the use of the road through Edwards' property.

As was said by Judge Kelly, in *Clark* v. *Reynolds, supra,* on page 632 (100 S. E. 470): "There was evidence tending to show that there had formerly been and was still probably available to the Clarks a right of way leading through what is now and has for many years been an abandoned lane to an open, private, but uncontested roadway extending down to the county road at the opposite side of the Clark land from that at which the controverted road enters the premises; and it is contended that this latter road is the route the Clarks ought to use to the exclusion of the other way. There are several very satisfactory answers to this contention. The Clarks clearly have a right to go the other way. This is a prescriptive right which implies an original grant, in no way depending upon or affected by the fact that there may be other ways of reaching the land."

Under the evidence in the instant case, it is not necessary to consider whether this other road is practically usable or not. If the complainants have established a prescriptive right to the roadway in question through the land of Edwards, their right to insist upon its continued use must be recognized.

In the case just mentioned, on page 632 (100 S. E. 470), the court refers to an agreement made between the parties in an effort to settle the controversy, apparently a year or more before the suit was brought. It was contended by the defendant that this attempt to settle the controversy by some sort of an agreement was a recog-

nition on the part of the plaintiff of the right of the defendant to stop the use of the right of way. The court did not take that view of the matter and simply so stated without discussion.

It is also shown that the original owners of the two tracts, and their respective successors, were on pleasant and intimate neighborly terms, except for the trouble that occurred in 1865 or 1866; that there had been some intermarriage between them and, therefore, to some extent, relationship between the parties existed. These facts are sometimes given weight in determining the question as to the character of the use of a roadway as between neighboring landowners. But in this case the uncontested use of the road for as long a period as sixty or seventy years was of such a character as not to enable us to gain any assistance from the neighborliness of the parties. During all of that time, while the servient property was in the occupancy of John Edwards, then of his son, then of Carr, and then of the present owner, the defendant in the suit here, the fact that the use of the roadway through the servient property was apparently acquiesced in without objection and with the complete acquiescence of the owners of the servient estate, tends to show that the use was not considered in any way as a trespass at any time, but was allowed to ripen into the acquisition of the legal right.

It appears from the evidence that in the spring of 1922, the defendant, Wade, and one of the plaintiffs, Hubert Moore, had a violent falling out, resulting in a fight between them, concerning a matter not connected with the roadway in question. This naturally brought about a feeling of violent hostility between them, and several months afterwards, while that feeling still exsted, Wade closed the road through his place and so prevented its further use. This suit was then brought

by the plaintiffs against Wade to enforce their right to the use of the road.

Owing to these circumstances, some degree of acrimony is displayed by the witnesses in giving their testimony, but that should not be allowed to affect the ascertainment of the rights of the parties.

The latest case on the subject of the acquisition of a right of way by prescription in Virginia is *Pruitt* v. *Shafer*, 137 Va. 658, 120 S. E. 275. There was in that case a decree for the defendant in the trial court and that decree was confirmed. The court finds from the testimony that there was direct evidence that the use of the road began by the permission of the then owner or owners of the alleged servient estate, and that there was no evidence either direct or indirect to the contrary. This fact being established, it was necessarily held that any presumption in favor of the plaintiff was rebutted and therefore the plaintiff had failed to establish the right he claimed.

In referring to the case of *Williams* v. *Green, supra,* the court quotes that case with approval and cites the following, taken from a Pennsylvania case, in the course of the opinion in *Williams* v. *Green:* "In the absence of evidence tending to show that the long continued use of the way may be referred to a license, or special indulgence, that is either revocable or terminable, the conclusion is that it has grown out of a grant by the owner of the land and has been exercised under the title thus derived. The law favors this conclusion, because it will not presume any man's act illegal. It is reasonable to suppose that the owner of the land would not have acquiesced in such enjoyment for a long period when it was to his interest to have interrupted it, unless he felt confident that the party enjoying it had a right and title to it that could not be defeated. And besides, seeing that it can work no prejudice to any one

excepting to him who has been guilty of great negligence, to say the least of it, public policy and convenience require that this presumption should be made, in order to promote public peace and quiet men in their possession.''

However, the testimony in *Pruitt* v. *Shafer*, going to establish the fact that the road originated only in a permission by the owner of the servient estate and continued to be used with his permission only, was overwhelming, and, therefore, the court held that no right could have been acquired by prescription.

[8] The evidence in the instant case is to some extent conflicting, and in many respects is vague and unsatisfactory; but on the whole case we are unable to find that the circuit court was not justified in holding that the plaintiffs had established their right to the use of the roadway, as claimed, by prescription. As has been frequently held, the burden is upon the appellant here to overcome the presumption in favor of the correctness of the decree below and to satisfactorily show that there was error in his prejudice. *Smith* v. *Alderson*, 116 Va. 986, 83 S. E. 373.

We are of opinion that the decree should be affirmed.

*Affirmed.*