# $\mathfrak{Staunton}$

MAGGIE BEVERLY POWELL V. E. E. MAGEE, IN HIS OWN
RIGHT AND AS ATTORNEY IN FACT FOR E. A. LAFRAGE.

September 6, 1950.

Record No. 3689.

Present, Gregory, Eggleston, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*Hill, Martin & Robinson* and *S. W. Tucker*, for the appellant.

*L. R. Slagle*, for the appellee.

SPRATLEY, J., delivered the opinion of the court.

This proceeding was instituted by Maggie Beverly Powell, hereinafter referred to as the complainant, against E. E. Magee, in his own right and as attorney in fact for E. A. LaFrage, seeking an injunction against the defendant, his agents, and servants from interfering with the complainant in the full use and enjoyment of a roadway extending from the lands of the complainant through the land of the defendants to a public highway. The bill alleged that the complainant was entitled to use the said road as an easement both by necessity and by prescription.

E. E. Magee, in his own right and as attorney in fact for E. A. LaFrage, answered denying all of the allegations of

the bill. The case was heard upon the bill, the answer and depositions, after which the trial court viewed and examined the premises. The relief prayed for was denied and complainant brought this appeal.

The parcels of land owned by the complainant and by Magee and LaFrage were each a part of a larger tract, formerly known as Ingleside, containing 597 acres, owned by R. T. Wilson. Wilson disposed of Ingleside by eight separate conveyances at different times. His last deed, dated August 1, 1903, conveyed a 52-acre tract, the land now owned by the complainant, to David Beverly, her father. This land is sometimes hereinafter referred to as the Beverly-Powell tract. Theretofore, by deed of December 6, 1899, Wilson conveyed to James C. Robinson a tract of 60 acres, lying immediately adjacent to the easterly side of the land conveyed to Beverly. On December 7, 1899, Robinson sold and conveyed his 60 acres to Sam White. The 60 acres were subsequently acquired by E. E. Magee, sometimes known as E. E. McGhee, by deed dated February 13, 1932. Magee conveyed the same land to E. A. LaFrage on December 11, 1933. On February 4, 1943, Magee, as attorney in fact for LaFrage, conveyed to Lester Roberts 35.75 acres of the 60-acre tract, lying to the extreme east and abutting on State Highway No. 615, retaining 24.25 acres, lying on the west and next to the eastern boundary of the land of complainant. In the deed to Roberts the grantor expressly reserved a roadway over the land conveyed, from a gate located on the division line between the land of the grantee and the land retained, running easterly in a straight line to State Highway No. 615, passing to the south of a house on the Roberts' land. A plat of the land conveyed, showing the roadway, was recorded.

The 52-acre tract of complainant is located in Greensville county. It is bounded on the north and west by a lake known as Slagle's Pond, on the south by the land of Sidney Robinson, and on the east by the lands of Magee or LaFrage, the 24.25 acres sometimes referred to as the Magee-LaFrage

tract. Both the latter tract and the 35.75 acres of Lester Roberts separate complainant's land from State Highway No. 615. The right of way claimed runs over the northern edge of the Magee-LaFrage tract. The lands of the complainant at no point touch a public highway, or a right of way connecting therewith.

The evidence shows that in 1899, when R. T. Wilson conveyed the 60-acre tract to Sam White, as one parcel of land, there was a roadway of sufficient width to accommodate ordinary vehicles running from the land retained by the grantor, the Beverly-Powell tract, across the 60-acre tract, a distance of about one-half mile to State Highway No. 615. This roadway served Wilson and the subsequent owners and occupants of the dominant tract, the Beverly-Powell land, as their only outlet until about 1940, when the present owner, or the attorney in fact for the owner, of the Magee-LaFrage land, the servient land, closed it by erecting across it a gate, on or near the western boundary line of the land of Roberts. Complainant was thereafter required to cross defendants' land at another place, on a detour from the original roadway. There is some testimony that the detour is unsuitable for vehicular traffic.

Sidney Robinson, born in 1898, and who had lived all of his life on the farm adjoining complainant's land on the south, testified that the road in dispute had been constantly used by the occupants of the Beverly-Powell tract as far back as he could remember until Magee closed it about two years ago; that it was the only roadway leading from the premises to the public road, and there was no other "possible way" for its occupants to get out; that the complainant and her father had helped maintain the road; that its course had never been changed; and that, 30 years ago, he had heard Sam White, who then owned and lived on the 60-acre tract obtained from James C. Robinson, say that he couldn't close the road because David Beverly had a right to use it.

Maggie Beverly Powell testified that she was "raised up" on her tract and that there was no other roadway from it to

the public highway, save the one in dispute; that she and her family had travelled it until a gate was put across it by Magee; that her father sometimes helped to keep the road in condition; and that she had never heard any question about her right to use it until Magee objected.

Nick Avent, 64 years of age, who had lived all of his life near the lands in question, said that the roadway had been in use "ever since I have been here;" that there never "had been any other roadway leading from the Beverly farm to the highway;" and that he had never heard any objection to its use until Magee bought the land over which it ran.

Three other witnesses testified that they had been familiar with the premises for 45 or 50 years, or more, during all of which time it had been used by occupants of the Beverly-Powell tract, and that they knew of no other roadway leading from it to the highway.

Several of the witnesses explained that in testifying that the owners of the Beverly-Powell tract had permission to use the road they meant that they had never heard of any objection to anyone using it before Magee erected a gate across it.

The roadway was established when both the dominant and servient estates belonged to the same owner. It was, according to the evidence, the only outlet left to Wilson when he sold the 60-acre tract to White and retained the 52-acre tract for himself, later sold to David Beverly.

Magee testified that when he purchased his land in 1933, the Beverly-Powell farm was "dormant," and while he knew of the existence of the roadway, little, if any, use was made of it by the occupants of complainant's land; that in 1937 he constructed a fish pond near the roadway and thereafter persons using the road going to and from complainant's land muddied the waters of his pond and damaged his orchard; that neither complainant nor her father assisted him in maintaining the road; and that it had become unfit for use, so he arranged for a detour over other land about 40 feet from the original roadway. He admitted that the roadway, as

claimed by complainant, was used until 1940, at which time he erected a gate to stop passage over it. He did not know how the road had been originally established.

There is no evidence showing the location of the other six parcels sold by Wilson from Ingleside or whether any of the six parcels abutted on any public road other than Highway No. 615. There is nothing to show the express reservation of a right of way through any lands formerly sold and conveyed by Wilson, or whether, at the time he sold to David Beverly, there was a right of way or outlet to any road other than Highway No. 615. Nor is there any positive evidence showing original permission or license to use the disputed right of way, or denial of its use until 1940. The testimony of Magee is not in conflict or inconsistent with the evidence of the complainant, save as to repairs to and maintenance of the road.

The evidence is uncontradicted that the use of the roadway had been apparent, continuous, and reasonably necessary for the occupants of the Beverly-Powell tract since 1899, and that, for more than 20 years, prior to the time Magee closed the roadway, complainant and her predecessors in title had enjoyed the open, continuous and notorious use of it without objection from the owners of the land over which it passed.

Acquiescence in the use of a way carries with it an implication of consent or permission to its use on the part of the person acquiescing. For distinction between acquiescence and permission or consent, see *Clark* v. *Reynolds,* 125 Va. 626, 629, 100 S. E. 468.

In view of our conclusion that the evidence is sufficient to establish an easement by prescription, it is unnecessary for us to discuss and determine whether complainant acquired an easement by necessity, although there is considerable evidence to support her claim. For a clear discussion of the rules relating to the establishment of an easement by necessity, see *Jennings* v. *Lineberry,* 180 Va. 44, 21 S. E. (2d) 769.

In Volume 1, Minor on Real Property, Second Edition, Ribble, page 140, section 101, this is said:

"Thus, if we suppose the owner of land to convey the same, retaining however a central building or farming tract, surrounded on all sides by the land conveyed, and without stipulating for any right of way to the surrounded tract, since it would be contrary to public policy to permit such tract to remain forever useless and unproductive, it will be assumed that the parties *intended* that the grantor should *reserve a way by necessity* over the lands conveyed; and the same presumption arises, though the grantor's excepted tract is bordered *on some sides* by the lands of *strangers*."

The general principles of law applicable to easements have often been considered by this court.

■ It is well settled in Virginia that in order to establish a private right of way over the lands of another by prescription, it must appear that the use and enjoyment thereof by the claimant was adverse, under a claim of right, exclusive, continuous, uninterrupted, and with the knowledge and acquiescence of the owner of the land over which it passes, and that such use has continued for a period of at least twenty years. *Williams* v. *Green*, 111 Va. 205, 68 S. E. 253; *Reid* v. *Garnett*, 101 Va. 47, 43 S. E. 182; *Gaines* v. *Merryman*, 95 Va. 660, 29 S. E. 738.

■ "Where there has been an open, visible, continuous and unmolested use of a road across the land of another for at least twenty years, the use will be presumed to be under claim of right, and places upon the owner of the servient estate the burden of rebutting this presumption by showing that the use was permissive, and not under claim of right." *Rives* v. *Gooch*, 157 Va. 661, 663, 162 S. E. 184; *Davis* v. *Wilkinson*, 140 Va. 672, 125 S. E. 700; *Clark* v. *Reynolds*, *supra*; *Wade* v. *Moore*, 139 Va. 765, 775, 124 S. E. 201.

In *Williams* v. *Green*, *supra*, we held that when a way has been used openly, uninterruptedly, continuously, and exclusively over the lands of another for more than twenty years, the origin of the way not being shown, there is a *prima facie*

presumption of a right or grant from the long acquiescence of the party upon whose land the way is, and that such use was under a claim of right and adverse; that the *bona fides* of the claim of right is established and the burden is upon the owner of the land over which the road passes to rebut the presumption by showing permission or license from him or those under whom he claims or objection to such use made under circumstances that will rebut the presumption.

In *Hall* v. *Backus*, 92 W. Va. 155, 114 S. E. 449, it was held, where there had been an open, continuous and notorious use by an owner of land, of a private way over an adjoining tract owned by another person, known to, acquiesced in, unobjected to and unprotested by the latter, that such use was presumptively adverse to the latter and enjoyed under a *bona fide* claim of right by the former.

To the same effect see *Davis* v. *Wilkinson, supra.*

In *Clark* v. *Reynolds, supra,* the contention was made that there was another roadway over which the appellant could travel to reach the highway, and that she should be required so to do. We there held that a prescription which implies an original grant is in no way dependent upon or affected by the fact that there may be other ways of reaching the land. To the same effect see *Wade* v. *Moore, supra.*

Applying the general principles above outlined to the facts in this case, we are of opinion that the trial court erred in entering the decree from which the appeal was taken. Therefore, that decree must be reversed, and this court will here enter a decree establishing the roadway described in complainant's bill, and enjoining the defendants from interfering with the complainant, her heirs, devisees, and assigns in the full use and enjoyment of the said roadway.

*Reversed and final decree.*