## Staunton

### J. R. GRAHAM v. W. W. THOMPSON.

September 17, 1925.

1. EASEMENTS—*Private Ways—Changing Pathways—Permission.*—In the instant case a suit to enjoin interference with a private way, while there were some loose statements of witnesses that there had been a way through the servient estate for fifty years, yet they were indefinite as to the location or character of the way. There was no contradiction of testimony of witness after witness that prior to 1905 there was never a road on which horse-drawn vehicles did or could go, though there was a foot path sometimes used by persons on horseback. But this path was changed from place to place at the will of the owner; plowed up when he cultivated the field, and was used generally by the neighborhood. Those who walked or rode through went by permission of the owner.

*Held:* That a way by prescription was not established.

2. PRESCRIPTION—*Private Ways—Permission.*—To acquire an easement by prescription, it must not only be adverse, continuous, exclusive and uninterrupted for at least twenty years, and along a definite line of travel, but it must be without the permission of the owner, for it has been repeatedly held that the use of land of another for any length of time merely by permission will not ripen into title.

3. EASEMENTS—*Private Ways—Prescription—Permission.*—In the instant case a suit to enjoin interference with a private way, where the road in controversy was constructed within twenty years and its use by others than the owner was clearly established to be by permission of the owner, the rule that when the way has been used continuously for a period of twenty years, the origin of the road not being shown, the presumption is that the use is adverse, does not apply.

Appeal from a decree of the Circuit Court of Floyd county. Decree for complainant. Defendant appeals.

*Reversed.*

The opinion states the case.

*J. E. Burwell* and *Harless & Colhoun*, for the appellant.

*R. F. Tompkins, B. G. Howard* and *Jackson & Henson*, for the appelle.

CHICHESTER, J., delivered the opinion of the court.

The sole question at issue in this case is whether the appellee here, the complainant below, and so designated hereafter, is entitled to a private right of way by prescription over the lands of the appellant, respondent below, and hereinafter so designated. The complainant alleges this right in his bill in which he prays for a perpetual injunction. The respondent denies the right in his answer, and alleges that such user of the way as complainant and his predecessors in title have enjoyed was by permission. The trial court held that the complainant was entitled to the right of way, and by decree entered in January, 1924, perpetuated an injunction theretofore granted enjoining respondent from "obstructing or interfering with the private road" of the plaintiff as now located."

The complainant owns what is spoken of in the record as the "Weddle" tract of land, containing 113½ acres, and the respondent owns an adjoining tract known as the "Lester" tract, containing 155½ acres, both lying on Little river, in Floyd county. They were never parts of one and the same tract.

[1] A great many witnesses were examined, and while there are some loose statements of witnesses that there had been a way of travel through the Lester tract by the owners of the Weddle tract for fifty years,.

when brought down to details they are indefinite as
to the location or the character of the way, and there
is practically no contradiction of the testimony of
witness after witness that prior to 1905 there was
never a road over which horse-drawn vehicles did or
could go; there was a foot path, sometimes used by
persons on horseback, which went partly through
woods and partly across an open field, but that this
path was changed from place to place at the will of
the owner; plowed up when he cultivated the field,
and was used generally by neighborhood people. Those
who walked or rode through went through by per-
mission of the owner, then C. D. Lester, and had to
lay down the fences to get through.

The testimony of W. S. Bishop, who owned the
"Weddle" place twenty-five years ago, claimed now
to be the dominant tenement, is a fair sampleof the
testimony of fifteen or more witnesses in support of
the answer and of what has been outlined as the
evidence.

"Q. 3. How many years ago has it been since you
lived in the Weddle property?

"A. If I am not mistaken it was twenty-five years
ago last April since I lived there.

"Q. 4. While you were living on the Weddle prop-
erty did you live there as owner of the property or
tenant?

"A. I lived there as owner of the property.

"Q. 5. As owner of the Weddle property did you
claim any right of way through the lands then owned
by Fletcher Lester's father and out to the White Grove
road?

"A. I went through every once in a while, drove
through on horseback but I never drove through with a
wagon.

"Q. 6. Did you claim any right to go through there or just go through by permission?

"A. We were just neighbors there together, passed through backwards and forwards and did not claim any right of way.

"Q. 7. In buying the land did you think that you had any right of way through Lester's land?

"A. No, there had not been any pathway when I went there, of course we had a way to get out from my land, I did not expect that because the others that lived there before me did not.

"Q. 8. Was this path that you speak of definitely located, that is I mean was it always at the same place or was it changed from place to place in the cultivation of the lands.

"A. Well, in the cultivation of the lands sometimes it would have to go through the fence on the other side."

Thus it clearly appears that there was never an open and notorious user of any right of way by the owner of the "Weddle" tract over the "Lester" tract; it was never adverse, continuous, exclusive, uninterrupted or along a definite line of travel, and this changeable and changing pathway was used by all who used it by permission of the owner of the "Lester" tract.

[2] "To acquire an easement by prescription, it must not only be adverse, continuous, exclusive and uninterrupted for at least twenty years, and along a definite line of travel, but it must be without the permission of the owner, for it has been repeatedly held that the use of land of another for any length of time merely by permission will not ripen into title." *Kent* v. *Dobyns*, 112 Va. 586, 72 S. E. 139.

The practically uncontradicted evidence also shows

that the present road over which vehicles now pass was built seventeen or eighteen years ago by the son of the then owner of the land, Letcher Lester, assisted by C. E. Richardson, then owner of the "Weddle" tract, and three or four other neighbors, and that those who used this wagon road since that time have used it by permission of the owner.

W. J. Epperly's testimony is typical of the evidence on this point.

"Q. 20. When the road that is now there was made, who made it?

"A. Well, I helped a few days on it.

"Q. 21. Who else was there helping to make it?

"A. Bill Epperly, Harve Hishop, W. I. Epperly, Letcher Lester and a few more I do not remember.

"Q. 22. Why did you help to make it?

"A. Well, sometimes I seen cause to go out that way and as a neighbor I thought I would go up and help on the road.

"Q. 23. Did you so tell Mr. Lester that was your reason for assisting him in making the road?

"A. I told him when I went up there I come up to help him a little while.

"Q. 24. What was your understanding as to the reason for the others helping to make the road?

"A. That was just my understanding, that they were all helping to pass over it once in a while.

"Q. How many years ago was it?

"A. It would be around seventeen or eighteen years, the best that I could guess at it."

Thus it will be seen that the road in controversy was constructed within twenty years and in addition it is shown that its use by others than the owner is clearly established to be by permission of the owner.

The rule, therefore, invoked by counsel for plaintiff,

that when the way has been used continuously for a period of twenty years, the origin of the road not being shown, the presumption is that the use is adverse, as announced in *Davis* v. *Wilkinson*, 140 Va. 672, 125 S. E. 700, and kindred cases, does not apply here.

In *Witt* v. *Creasey*, 117 Va. 876, 86 S. E. 129, Judge Kelly, speaking for the court, says: "An easement will not arise by prescription from permission of the owner of the servient estate, no matter how long the permissive use may continue. And having begun by permission, it will, in the absence of some decisive act on the part of the owner of the dominant estate indicating an adverse and hostile claim, continue to be regarded as permissive, especially when the latter's use of the easement is in common with its use by others."

In *Reid* v. *Garnett*, 101 Va. 47, 43 S. E. 182, Judge Buchanan says: "In order to establish a private right of way by prescription over the lands of another, the use and enjoyment thereof by the claimant must be shown to be adverse, under a claim of right, exclusive, continuous, uninterrupted and with the knowledge and acquiescence of the owner of the land over which it is claimed (*Gaines* v. *Merryman*, 95 Va. 660, 666, 29 S. E. 738; Washb. Easem. [3d ed.] side p. 86); and such use and enjoyment must continue for a period of at least twenty years (*Cornett* v. *Rhudy*, 80 Va. 710)." See also *Williams* v. *Green*, 111 Va. 205, 68 S. E. 253; *Kent* v. *Dobyns*, 112 Va. 586, 72 S. E. 139; *Walton* v. *Knight*, 62 W. Va. 223, 58 S. E. 1025.

And later in the same case the same learned judge says: "If it were once understood that a landowner by allowing his neighbors or the public to pass through his lands without objection over a passway which he himself used, would thereby, after the lapse of twenty

years, confer on such neighbors, or any of them, the right to compel the way to be kept open for his or their benefit and enjoyment, a prohibition against all such travel would immediately ensue."

Clearly, the injunction should have been dissolved and the complainant's bill dismissed at his cost, since he has utterly failed to carry the burden of proving his case by a preponderance of the evidence.

This court will now proceed to enter such decree as the trial court should have entered.

*Reversed.*