# Richmond

SADIE F. RIVES, ET ALS. v. T. L. GOOCH

January 14, 1932.

Present, Campbell, C. J., and Holt, Hudgins and Browning, JJ.

The opinion states the case.

*Allan Epes,* for the appellants.

*Morton G. Goode, W. Potter Sterne, Irving P. Whitehead, F. M. Laynor* and *William Beasley,* for the appellee.

Hudgins, J., delivered the opinion of the court.

The decree from which an appeal was allowed held that the appellee had acquired by prescription a right of way of sufficient width to allow the passage of vehicles going in opposite directions, across the appellants' land, and permanently enjoined them from obstructing or interfering with its free and convenient use by the appellee and his successors in title.

It is well settled in Virginia that in order to establish a private right of way over the lands of another by prescription, it must appear that the use and enjoyment thereof by the claimant was adverse, under a claim of right, exclusive, continuous, uninterrupted, and with the knowledge and acquiescence of the owner of the land over which it passes, and that such use has continued for a period of at least twenty years. *Williams* v. *Green,* 111 Va. 205, 68 S. E. 253; *Reid* v. *Garnett,* 101 Va. 47, 43 S. E. 182; *Gaines* v. *Merryman,* 95 Va. 660, 29 S. E. 738.

Where there has been an open, visible, continuous and unmolested use of a road across the land of another for at least twenty years, the use will be presumed to be under claim of right, and places upon the owner of the servient estate the burden of rebutting this presumption by showing that the use was permissive, and not under claim of right. Note in 44 L. R. A. (N. S.) 98; *Davis* v. *Wilkinson,* 140 Va. 672, 125 S. E. 700; *Williams* v. *Green, supra; Witt* v. *Creasey,* 117 Va. 872, 86 S. E. 128; *Muncy* v. *Updyke,* 119 Va. 636, 89 S. E. 884; *Clark* v. *Reynolds,* 125 Va. 626, 100 S. E. 468; *Landrum* v. *Tyler,* 126 Va. 600, 101 S. E. 788; *Clatterbuck* v. *Clore,* 130 Va. 113, 107 S. E. 669; *Pruitt* v. *Shafer,* 137 Va. 658, 120 S. E. 275; *Wade* v. *Moore,* 139 Va. 765, 124 S. E. 201; *Walton* v. *Knight,* 62 W. Va. 223, 58 S. E. 1025; *Kent* v. *Dobyns,* 112 Va. 586, 72 S. E. 139.

The parties agree that the above principles of law control

the decision in this case and differ only as to the application of these principles to the evidence.

The evidence clearly establishes that the appellee is the owner of a tract of land containing 635 acres, which at no point touches a public highway, that between his northern boundary and Darvill's road, running east and west, is the W. G. Clark land, and between his western boundary and the Birchen Hill, or White Chapel road, running north and south, is the Rives land, and that there is an outlet from the southern boundary of his land to the public highway called the River road, running east and west; that the appellants owned a tract of some eighty-two acres, a part of the old Rives tract, between Gooch's northwest corner and Darvill's road, and that the road in controversy crosses this eighty-two acre tract, running in a northwesterly direction.

The writer has prepared a very rough sketch* of the roads and the lands mentioned in the testimony, indicating by dotted lines that part of the two roads in controversy, which is made a part of this opinion.

Prior to 1919 the appellee was a stranger to these parts. In that year he bought from Gordon Davis and brother the land to which it is claimed the road in question is appurtenant, and moved from his home in North Carolina to this 635-acre farm. The Davis brothers acquired the land from A. F. Burnett in 1912; and Burnett, in turn, purchased it at public auction from the estate of Elisha Hardy about the year 1883. Mrs. B. P. Rives owned the land between this tract and the Birchen Hill road and a strip of land between the northwest corner of this tract and Darvill's road. She conveyed some eighty-two acres, including this strip of land, to her son, Aubrey Rives, who died leaving a widow, Sadie F. Rives, and two infant sons, the appellants here. Formerly the main outlet used by the Rives family extended

* See diagram page 665.

west from their home to the Birchen Hill road, and the eastern part of this private road extended from in front of the old Rives house east to the northwest corner of the

Gooch tract. This road extending from the western boundary of the Gooch farm, in front of the old Rives home, to the Birchen Hill road, as shown on the sketch by the dotted line A-B, is the road the appellee claims his predecessors in title acquired by prescription, and that sometime about

1912, or somewhat later, the parties agreed to change the road A-B to the road A-C-D, and that he has a right by prescription to one or the other of these roads.

The weight of the evidence establishes that while Burnett owned the property (from 1883 to 1912), the main outlet used by him was the road leading south to the River road. It seems that Burnett at one time owned another tract of land called the Clover Hill farm, situated just south of the River road, and that after he sold this last-mentioned place he did not use the southern outlet so much, as one of the witnesses for the appellee stated: "Well, Mr. Burnett when he bought the place from the Hardy estate, he used it until it got right bad and then he went out most any way he chose, sometimes through Mr. Bourne's and sometimes through Mr. Rives. * * * Mr. Burnett used it practically all the time he was there and I do not recall how long he has been away; some of the others can tell you better when he left there."

The appellee further proved that the road A-B had been used by the occupants of the land, and others living to the east of this tract, for more than twenty years; that this use was open, notorious, continuous, and with the knowledge and acquiescence of the owners of the Rives tract.

This is sufficient to raise a presumption in favor of the appellee, and if this were all he would have been entitled to the relief requested. The appellants, however, introduced Mr. J. W. Wells, a witness who as a boy lived on the Gooch property for six years, while it was owned by the Hardy estate, and who at one time owned the land just north of and between the Gooch tract and Darvill's road, designated on the sketch as the W. G. Clark land. Mr. Wells testified: "Well, when I lived there on this place the only outlet led south of the farm to the river road. That was used by everybody which went off that farm and back until the farm changed hands and it went into the hands of Mr. A. F.

Burnett. He used that outlet for a number of years after he bought the place. He then sold the Clover Hill farm and with the consent of Mrs. Rives he traveled through her place by a road leading west."

This witness emphasized that Burnett's use of this road A-B was by permission of Mrs. Rives. He said: "Mr. Burnett told me himself that he got permission from Mrs. Rives to travel through her place, with the understanding that he was to keep her gates closed so that her stock would not get out on anybody. Mrs. Rives told me the same herself."

The testimony of this witness is positive, uncontradicted, and emanates from a person who has been familiar with the two tracts of land for fifty-nine years. It is not in conflict or inconsistent with any evidence introduced by the appellee. The appellee's evidence falls short of proving a grant, but it makes a *prima facie* case in that the law will presume a grant under the circumstances disclosed by him. The contention of the appellee is that such use of the way for a period of more than twenty years raises the presumption that the owner of the servient estate had executed and delivered to the owner of the dominant estate a grant to the road, and that use of the road had been exercised under the title thus obtained. The fact presumed is the existence of the grant. *Worrall* v. *Rhoads*, 2 Whart. (Pa.) 427, 30 Am. Dec. 274; *Williams* v. *Green*, *supra; Wade* v. *Moore*, *supra*.

As was said by Mr. Justice Field in *Lincoln* v. *French*, 105 U. S. 614, 617, 26 L. Ed. 1189: "Presumptions are indulged to supply the place of facts; they are never allowed against ascertained and established facts. When these appear, presumptions disappear." *Schmitt* v. *Redd*, 151 Va. 333, 143 S. E. 884.

■ Judge Burks, in *Mansfield* v. *Commonwealth*, 146 Va. 279, 283, 135 S. E. 700, 701, said: "There is no room for presumption where there is positive, affirmative evidence on the subject."

While the appellants have not shown the origin of that part of the road in question which extends from the old Rives house to the Gooch line, they did show that the western part of the road A-B, leading from the old Rives house to the Birchen Hill road, was formerly the main outlet to the Rives place, and that Mr. Burnett obtained express permission from Mrs. Rives after he sold the Clover Hill farm (just when this occurred does not appear) to the use of the road A-B.

Chief Justice Prentis, in *Wall* v. *Landman*, 152 Va. 889, 148 S. E. 779, 781, said: " * * * where the owner of land opens a way thereon for his own use and convenience, the mere use by his neighbor under circumstances which neither injures the way nor interferes with the owner's use of it, in the absence of some other circumstance indicating a claim of right, will not be considered as adverse, and will never ripen into a prescriptive right."

In the face of positive evidence showing permission or license, presumption of a right, or grant, disappears. A prescriptive right will not arise from the permission of the owner. It has been repeatedly held that the use of the land of another for any length of time, merely by permission, will not ripen into title. *Kent* v. *Dobyns, supra; Witt* v. *Creasey, supra; Graham* v. *Thompson*, 143 Va. 29, 129 S. E. 272.

The uncontradicted evidence further shows that sometime prior to 1912, a Mr. Francis was operating a saw-mill on the Gooch land, then owned by Mr. Burnett, and Mrs. Rives prohibited him from hauling lumber from the Gooch tract across any portion of her land, and that he obtained an outlet over the land of Mr. J. W. Wells. There was no question raised at the time as to her right to prohibit the use of the road, and Mr. Burnett, so far as the record shows, acquiesced in the exercise of this right by Mrs. Rives. This exercise of control over the road is inconsistent

with the existence of the right now claimed by the owner of the Gooch tract, and is consistent with the fact that Mrs. Rives had given permission, or license, merely for the use of this road.

The pertinent facts of the origin and use of the road A-C-D are, that in 1912, or thereabouts, the Brill Lumber Company had purchased the standing timber on various tracts of land in this community, including that on the Rives and Burnett tracts; that in removing this timber a wagon or log road was used from A to C; that about the same time, or shortly before, Gordon Davis and his brother, Landon, became the owners of the Gooch land, and that Gordon Davis, with the permission of Mrs. Rives, used this road A-C in going to and from his father's home; that at that time neither he nor his brother claimed a right to the use of the road, but stated that it was used by permission only. From 1912 to 1919 this road A-C seems to have been improved from time to time, and by 1919 it was used as the main outlet of the Gooch farm. It is significant that Davis, the then owner of the Gooch property, at no time claimed a right to the road A-B, or A-C-D. Both he and Mr. John Rives testified that the use of these two roads was with the consent of the owners of the land.

It is true that the appellee proved that when Gordon Davis sold the tract of land to him, Davis and the real estate agent told him that the road A-C was the main outlet to the 635 acre tract, and that from the statements made by the owner and the agent at the time Gooch was led to believe that this outlet was owned by Davis, and as a further evidence of that fact it appears that when Davis filed an application to borrow money from the Federal Land Bank, he stated that the tract of land was on Darvill's road, and that the secretary-treasurer of the Dinwiddie National Farm Loan Association understood that Davis at that time owned a right of way across the Rives land.

This evidence tends to show that Davis, or his agent, misrepresented facts to Gooch and it might be the basis for a cause of action against him, but it could have no binding effect upon the appellants here; they were not present and their rights cannot be affected by statements of Davis or his agent. The testimony is admissible for the purpose of contradicting or impeaching the testimony of Davis, but not for the purpose of divesting the appellants of any right.

It appears that soon after Gooch moved on this farm he asked Mr. John Rives about the outlet A-C-D and was told that it was owned by Mrs. B. P. Rives, and had been and was being used with her consent, and he might use it, provided he stayed in the roadbed and would help keep it in shape for travel. Shortly thereafter Gooch and Aubrey and John Rives did considerable work on the road.

Gooch does not deny working on the road with the parties mentioned, but he denies that he asked permission to use it. His testimony, however, indicates that he was fully informed of the fact that Mrs. Rives claimed complete ownership of the road, for he says: "I said they did not give me permission or consent. Every time I said anything about it they would say to just fix up our road. * * * No. I have never gotten no permission, they did come over there and told me what I could do, but I did not get no permission because when I bought it Mr. Gordon Davis and Mr. Fredericksen told me that that was the right of way. I told them I did not want a place unless it had a right of way. * * *

"Q. Did you at any time go over to Mr. Rives and get their consent to let you come out across there?

"A. No, sir; I went over there and asked them, I told them I heard that they were going to stop Mr. Wallace from hauling his logs; that he could not haul his logs out and wanted to know if it was so, so I could take action so he could get them out."

The owners of the Rives tract seem to have exercised continuously control and ownership over the roads A-B and A-C-D across their lands, and the owners of the Gooch tract and those dealing with them and having occasion to use those roads sought, and usually obtained, permission for such use.

Without further discussion, the evidence may be summarized as follows: (1) When Mr. Burnett desired the use of road A-B after he had sold his Clover Hill farm, he sought and obtained it with the understanding that he must keep the gates shut; (2) Mr. Francis asked permission to use the way to haul parts of a sawmill to the Gooch tract, and his request was granted; (3) Mr. Francis again desired to go across the Rives tract for the purpose of carrying lumber cut from the Gooch tract; this permission was denied him, and no question of the right to refuse the request was raised; (4) Gordon Davis and his brother asked and obtained permission to use the road A-C-D. There is no conflict in the evidence showing the above, but there is some conflict as to the following: (5) Gooch asked permission to use the road A-C-D and was told he might use it under certain conditions, which he seems to have complied with; (6) Gooch sold some timber to Mr. Wallace and Mr. Wallace obtained permission to use the road, provided he did not haul the timber or lumber when the roads were wet. He started to violate this provision and was stopped and required to wait until the road dried out. These facts and circumstances fully rebut the presumption which is the only ground upon which the appellee relies to create an easement over the land of the appellants.

Gooch alleged in his bill that he was the fee simple owner of the 635 acres mentioned above; that it was mortgaged to the Federal Land Bank of Baltimore by its former owners, the Davis brothers, to secure a debt of $7,000.00, and that he assumed the payment of this obligation; that the ap-

pellants here, or their predecessors in title, had conveyed the eighty-two acre tract to B. T. White, trustee, to secure the payment of certain debts; and to W. Moncure Gravatt, trustee, to secure still other debts. The Federal Land Bank, the lien creditor of T. L. Gooch, the trustees and the lien creditors named in the two deeds of trust on the eighty-two acre tract were made defendants to the bill. The Federal Land Bank was the only respondent, other than the appellants, to file an answer. In its answer it alleges that it holds the legal title to the land; that the amount of its debt, as of February 7, 1928, was $6,106.64; that it had made the $7,000.00 loan in 1918, believing that the road referred to in the bill was appurtenant to the 635 acres, praying that its answer be treated as a petition for affirmative relief, and joining in the prayer of the bill. This answer is signed by Mr. I. P. Whitehead, counsel for the Federal Land Bank of Baltimore.

From statements of counsel it appears that neither Mr. Whitehead nor anyone else in behalf of the bank made any other appearance in the cause, either at the taking of depositions or at the hearing before the trial judge. The bank introduced no testimony and filed no exhibits with its answer.

The Federal Land Bank moved to dismiss this appeal because its attorney had not received a copy of the petition for appeal, as required by Rule II (a).

This rule provides that when the petitioner to this court files his petition, he shall mail or deliver a copy to "opposing counsel in the trial court," who shall have ten days in which to file a written reply or brief in support of the trial court's decision. The object of the rule is plain and simple. It gives the successful litigant an opportunity, before the writ is granted, to point out the mistakes, if mistakes there be, in the statement of facts, and the reasons which influenced the trial judge in arriving at his conclusion.

Since November 6, 1929, when the rule, as last amended, was adopted, we have found that it saves needless search, often through long records, to ascertain the pertinent facts, and brings quickly and clearly to our attention the vital issues in the case, to which consideration can be given without wasting time on non-essential exceptions with which meticulous lawyers often needlessly encumber the record. Filing a reply brief frequently saves the losing party the needless expense of further litigation, and enables the successful party to enjoy the fruits of victory without delay. See address of Chief Justice Prentis, reports of Virginia State Bar Association, 1930, pages 543-544.

It is not necessary to mail or deliver a copy of the petition to every attorney of record, certainly not to one who has taken no part in the proceedings other than to file a brief answer. The attorney for the appellants had no reason to think that the attorney for the Federal Land Bank desired to file a reply brief to its petition. The "opposing counsel in the trial court" were the attorneys for the appellee who had filed the bill and conducted the entire proceedings. They received a copy of the petition, and vigorously and ably presented their client's cause to this court. Under these circumstances, the attorney for the Federal Land Bank is not deemed the "opposing counsel in the trial court," in the sense in which that term is used. The motion is overruled.

For the reasons stated, the decree of the Circuit Court of Dinwiddie county will be reversed, the injunction dissolved, and the case dismissed.

*Reversed and dismissed.*