**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 10-1344

SUN YUNG LEE,

Plaintiff - Appellant,

v.

ZOM CLARENDON, L.P.,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. T. S. Ellis, III, Senior District Judge. (1:09-cv-00402-TSE-JFA)

Argued: January 26, 2011                Decided: May 6, 2011

Before WILKINSON and KEENAN, Circuit Judges, and Irene C. BERGER, United States District Judge for the Southern District of West Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Nini Tin, Mark Davis Cummings, SHER, CUMMINGS & ELLIS, Arlington, Virginia, for Appellant. John E. Rinaldi, WALSH COLUCCI LUBELEY EMRICH & WALSH, PC, Prince William, Virginia, for Appellee. **ON BRIEF:** E. Andrew Burcher, G. Evan Pritchard, WALSH COLUCCI LUBELEY EMRICH & WALSH, PC, Prince William, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The instant appeal involves a dispute over a 14-foot wide L-shaped portion of property located in the Clarendon subdivision in Arlington, Virginia. Here, we consider whether an express or prescriptive easement exists over the property. We also review the district court's ruling to disallow expert opinion with respect to the creation of the purported express easement. For the reasons that follow, we affirm the district court's judgment.

I.

Plaintiff-Appellant, Sun Yung Lee (hereinafter "Lee"), the proponent of the disputed easement, owns the putative dominant estate, which for purposes of this opinion will be referred to as lots 238, 239, 240 of the Clarendon subdivision and portions of lots 217 and 241 (the "Reamy House"). Relevant to this dispute, the sole Defendant-Appellee, Zom Clarendon, L.P. ("Zom"), a Delaware limited partnership, owns the remainder of lots 217 and 241, as well as, lots 242 through 247 of the Clarendon Subdivision property. The parties' land is contiguous. Lee's property forms a triangle which faces both Washington Boulevard and North Irving Street. (Appellant's Brief at 10). A portion of this property consists of commercial business spaces which are front-facing on North Irving Street. Lee claims she is

2

entitled to use the paved driveway across Zom's property for access to the rear of the buildings located on her property.

Prior to discussing the litigation before the district court, a brief discussion of the relevant conveyances critical to the ownership history of the disputed land is warranted.

A.

In 1900, a large tract of land in Arlington, Virginia, was subdivided into approximately 300 lots, currently known as the Clarendon Subdivision. (Joint Appendix ("J.A.") at 34.) Lulu Cameron Follansbee purchased lot 217 and lots 238-242 of the Clarendon subdivision in January 1924. (Id. at 35.) By deed recorded on July 7, 1926, Follansbee conveyed portions of lots 217 and 241 to Judson Reamy. (Id. at 37-38.) This conveyance included a building constructed over portions of lots 217 and 241 which is referred to by the parties as the Reamy House or Reamy property. The balance of Follansbee's lots was transferred through various mesne conveyances which resulted in Dick Missakian's purchase of the lots on October 29, 1927. (Id. at 42-43.) On July 10, 1928, Missakian recorded a deed of trust on lots 238-240, 242, and the portions of lots 217 and 241 that did not include the Reamy property. (Id. at 45-48.) This deed of trust secured a loan in the amount of $32,500 made by Mary Hutchison to Missakian with respect to forty promissory notes.

3

Claude H. Woodward and H. Glenn Phelps were named as trustees (the "Woodward trustees"). The Woodward Deed of Trust authorized the trustees to release and re-convey the property back to Missakian, his heirs and assigns, upon full payment of the notes. However, upon default, the trustees were permitted to sell the property. (Id.)

By deed dated July 14, 1928, Missakian sold the parcels to Kristopher Dadaian subject to the Woodward deed of trust. (Id. at 50.)[1] In September 1929, Dadaian conveyed the properties to B.M. Hedrick, who likewise purchased the properties subject to the Woodward deed of trust. (Id. at 55.) Critical to the instant dispute, on March 1, 1932, the Woodward trustees and Hutchison, the note holder, executed a deed partially releasing Hedrick from the terms of the Woodward deed of trust. (Id. at 31.) This deed of partial release revealed that Hedrick had sold portions of lots 241 and 242 and paid $4,500 to Hutchinson.[2] (Id.) Hutchinson "directed" the trustees

---

[1] The property was also encumbered by a second deed of trust which named Frank L. Ball and Lawrence Douglas as trustees and Follansbee as beneficiary. (Id. at 52.) This second deed of trust was subordinate to the Woodward Trust and is not material to the instant dispute given the Woodward Trustees' foreclosure on the property in 1932.

[2] By deed dated January 8, 1932, Hedrick sold portions of lots 241 and 242 to Enoch A. Norris. (Id. at 61-62.) This deed did not include any language respecting an easement. (Continued)

4

to "release, relinquish, grant and convey" to Hedrick title to lot 242 and the portions of lots 217 and 241 that did not include the Reamy property,

> *subject however, to a right of way for ingress and egress* purposes for the benefit of the owners of lots 238, 239, and 240 over the following portion of land hereby released and contiguous thereto said right of way being bounded and described as [lot 217].

(Id.) (Emphasis added). Lots 238-240 remained subject to the Woodward deed of trust. Only the Woodward trustees and the note holder, Hutchison, signed this deed of partial release. It is upon this document that Lee relies for the assertion that an express easement over Zom's land was reserved.

By 1936, title to lots 217, 241 and 242 sans the Reamy House was united in Charles G. Schott. After a series of conveyances, Zom ultimately purchased this property in 2006 from the family of Channing Strother.

Lots 238-240 remained subject to the Woodward deed of trust until May 1935, when Hedrick defaulted on the loan. At the direction of the note holder, Hutchinson, the Woodward

---

Additionally, on May 27, 1932, Hedrick sold the portions of lots 217, 241 and 242 that he still owned to Hannah F. M. Hedrick, subject to "the restrictions and reservations of record." (Id. at 63-64.) Notably, this deed did not include a specific reference to the purported easement created in the deed of partial release made just months earlier.

5

trustees foreclosed on the property and sold the lots, "less and except, the land released by deed[,]" at a public auction to Union Investment Company of Washington for $20,000. (Id. at 69-71.) It is upon this foreclosure that Lee contends that an easement was created. Remarkably, the Trustee's Deed did not include a reference to any reservation or creation of an easement. In 1943, Teck Construction Co. purchased these lots and in 1958, purchased the Reamy property, thereby merging title to the Reamy property and lots 238-240 in a single owner. In 1963, Teck sold these lots to Lee's family. (See id. at 79-87.)

## B.

On or about March 19, 2007, as part of its plans to develop its property, Zom erected a chain link fence blocking access to the driveway utilized by Lee. (J.A. at 27.) Zom plans to construct a high rise building with both residential and retail space over the disputed land. (Appellant's Brief at 2-3.) Lee advised Zom that the fence interfered with her right of way and requested that it be moved. (J.A. at 28.) The fence was not moved and on March 17, 2009, Lee commenced this civil action in Arlington County Circuit Court seeking a declaration confirming that she has a valid easement with a legal right of use without interference from Zom and an injunction enjoining Zom from blocking her access to the easement.

Zom removed the case to the United States District Court for the Eastern District of Virginia invoking the court's diversity jurisdiction. Upon consideration of Lee's motion to remand and following jurisdictional discovery, the district court ultimately determined that it had subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

The parties thereafter filed cross motions for summary judgment. Lee advanced three theories to support her assertion that an easement existed which allowed her to cross Zom's land to access portions of her land lots. Generally, Lee claimed that an easement for the benefit of lots 238-240 was expressly reserved and created in a deed of partial release. Alternatively, Lee claimed she has an easement by prescription or implication to a separate area of land surrounding a building known between the parties as the Reamy House. The district court granted in part and denied in part the parties' motions. Pertinent to the discussion that follows, the district court found that an express easement was not created because neither the trustees nor the note holder of the Woodward deed of trust had the authority to create an easement in the deed of partial release; that Lee inappropriately relied on expert opinion to support the legal conclusions that a valid easement was created in the deed of partial release and that the deed of partial release was within Zom's chain of title; that, pursuant to

7

Virginia law, Lee's claim of an easement by implication fails because she could not establish that the easement existed at the time of severance in 1926; and that genuine issues of material fact existed which precluded an award of summary judgment on Lee's claim of easement by prescription. Lee v. Zom Clarendon, L.P., 665 F. Supp. 2d 603 (E.D. Va. 2009), judgment clarified (Nov. 20, 2009).[3]

The district court thereafter conducted a bench trial with respect to Plaintiff's claim of prescriptive easement and found in favor of Zom. The court determined that Lee's use of the paved driveway was continuous, uninterrupted and with the knowledge and acquiescence of the driveway's owners, but her use was not adverse, exclusive or under a claim of right. Lee v. Zom Clarendon, L.P., 689 F. Supp. 2d 814 (E.D. Va. 2010).

_____

[3] On November 5, 2009, Lee moved to alter the judgment to clarify the parties' property descriptions and to assert that the court mischaracterized her attorney's statements during the hearing with respect to her claim of an express easement. The court, on November 20, 2009, granted the modification of the description of Lee's property, but denied her motion to reconsider the court's ruling with respect to whether the easement was expressly created.

On December 22, 2009, Lee sought to appeal the court's October 22, 2009 and November 20, 2009 Order to this Court. However, on February 1, 2010, she moved to dismiss the appeal, pursuant to Rule 42(b) of the Federal Rules of Appellate Procedure, on "terms agreed to by the parties." We dismissed the action the following day.

8

On March 23, 2010, Lee filed the instant notice of appeal to seek appellate review from the district court's February 24, 2010 Order entering judgment for defendant Zom. (J.A. 1063).[4] Lee seeks our review of the district court's grant of summary judgment with respect to her claim of an express easement, as well as the evidentiary ruling on her expert opinion reports. She also appeals the district court's determination that a prescriptive easement does not exist over Zom's land.[5]

## II.

We review a district court's award of summary judgment de novo. Jennings v. Univ. of N.C., 482 F.3d 686, 694 (4th Cir. 2007) (en banc) (citing Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 283 (4th Cir. 2004) (en banc)). Summary judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(a). We review a district court's decision whether to admit

---

[4] On July 29, 2010, Lee moved this Court to certify two questions to the Supreme Court of Virginia. Appellee contested the motion and on August 27, 2010, this Court denied the request.

[5] Lee does not appeal the district court's ruling with respect to her theory of an easement by implication.

expert testimony for abuse of discretion. O'Neill v. Windshire-Copeland Assocs., 372 F.3d 281, 284 (4th Cir. 2004). Finally, we review a district court's judgment entered after a bench trial under a "mixed standard of review." Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc., 618 F.3d 417, 427 (4th Cir. 2010). Pursuant to this standard, factual findings may be reversed only if clearly erroneous, while conclusions of law are reviewed de novo. (Id.)

### III.

#### A.

Lee contends that she is "the holder of an express Right of Way [or easement] validly reserved in the Deeds of Partial Release." (Appellant's Brief at 17; see also J.A. 57-58, 59-60.) Generally, Lee asserts that in 1932, the note holder, Mary B. Hutchinson, the Trustees, Claude M. Woodward and H. Clarke Phelps, and fee simple owner, B.M. Hedrick, entered into a partial release of a portion of the property encumbered by the Woodward Deed of Trust. Lee contends that this deed of partial release included a reservation of an easement to benefit lots 238-240 of her property. She asserts that, upon Hedrick's default, the Woodward Trustees foreclosed upon his property and proceeded to sell the land by public auction. She contends that, upon this foreclosure, the easement reserved in the deed of

10

partial release created an easement on what is now Zom's property. While this Court finds suspect Lee's contention that an easement springs forth as a result of a Trustee's foreclosure, the initial consideration must begin with Lee's assertion that the easement was validly reserved in the deed of partial release.

As an initial matter, Lee, in her opening brief, contends that the district court erred in its grant of summary judgment by finding that neither the trustee nor the note holder independently had the power to reserve an express easement in the 1932 Deed of Partial Release. Instead, Lee asserts that the district court ignored the "fee simple owner's role as a party to the reservation of the easement" in the deed of partial release because his signature was not on the deed of partial release. (Appellant's Brief at 14.) Lee argues that B.M. Hedrick was a named party to the Woodward Trustee's Deed of Partial Release and that the release and re-granting of certain property to Hedrick was for his benefit. Lee also argues that as a "beneficiary/grantee, B.M. Hedrick's signature is not required on Deeds of Partial Release." (Id.) Perhaps, seeking a way to sidestep the district court's ruling that neither the trustee nor the note holder had the authority to create an easement, Lee seeks to carve out a distinction in her argument, now asserting that the reservation of the easement is valid due to the fee

11

simple owner's role in the "transaction" involving the deed of partial release. Zom, however, contends that Lee makes the argument, that the role of the fee simple owner was ignored, for the first time on appeal. We agree.

"Absent exceptional circumstances, of course, we do not consider issues raised for the first time on appeal. Rather, we consider such issues on appeal only when the failure to do so would result in a miscarriage of justice." Robinson v. Equifax Info. Serv., LLC, 560 F.3d 235, 242 (4th Cir. 2009)(internal citations and quotations omitted). The principle applied in this rule is that appellate courts "should not be considered a second-shot forum, a forum where secondary, back-up theories may be mounted for the first time. Parties must be encouraged to 'give it everything [they have]. . . at the trial level." Tele-Communications, Inc. v. C.I.R., 104 F.3d 1229, 1234 (10th Cir. 1997)(internal quotations omitted). "Propounding new arguments on appeal in an attempt to prompt us to reverse the trial court undermines important judicial values." (Id.)

Before this Court, Lee's argument is distinct in that she contends the issue is "whether the fee simple owner, Judge B.M. Hedrick, reserved the express easement in the Deeds of Partial release as a non-signatory named party." (Appellant's Reply at 3.) This is an argument that was not squarely raised or addressed by the district court.

A review of the record before the district court reveals that Lee initially asserted the express easement was reserved by the note holder through the deed of partial release. (See Memorandum in Support of Plaintiff's Motion for Summary Judgment at 1, Lee v. Zom Clarendon, L.P., 665 F. Supp. 2d 603 (E.D. Va. 2009) (No. 1:09cv402), judgment clarified (Nov. 20, 2009)). She later stated that the "note-holder (lienor) and trustee validly granted, executed and recorded the Deeds of Partial release . . . by the powers vested in them[.]" (Id. at 14); see id. at 16 ("In order to retain the best value of the property remaining under the Deeds of Trust, the note-holder expressly created the [easement] and did not release [the easement] from the lien of the Deeds of Trust.")) During a hearing on the parties' motions for summary judgment, Lee, through counsel, conceded that the "trustees by themselves, in a vacuum, couldn't create an easement, I agree with that." (Transcript Motions Hearing at 21, Zom Clarendon, L.P., 665 F. Supp. 2d 603 (E.D. Va. 2009) (No. 1:09cv402), judgment clarified (Nov. 20, 2009)). Instead, Lee argued that the note holder had the power to create the easement. (Id.) When prompted by the court to explain the note holder's power, Lee pressed that the power to create the easement existed because "the note holder has an interest to get the full value [of the property] . . . in the event of default."  (Id. at 22.)  Lee likened the deed of

13

partial release to a contract and stated that the easement was retained as consideration with the fee simple owner's consent. (Id. at 23.) The district court appropriately concluded that a note holder does not hold any legal interest or estate in the property and thereby has no authority to create an easement. Now, Lee wishes to shift this Court's focus from the Trustee and the note holder to the fee simple owner.

In response to Zom's assertion that she is proffering a new argument on appeal, Lee argues that the deeds of partial release, which included Hedrick as a named party, were provided to the court as part of its joint exhibits (Appellant's Reply at 6); that her arguments were made during the October 9, 2009 motions hearing and pursuant to her motion to alter the court's judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure (Id. at 7); and that the district court ruled on the issue when it stated "[a]lthough named a 'party of the second part' in the deed of partial release, Hedrick did not sign the instrument." (Id.) We find Lee's position tightly drawn and unpersuasive. To be sure, the district court made no specific finding or conclusion of law about the fee simple owner's part in the transaction. The district court merely observed in its discussion of the conveyances underlying this dispute that the deed of partial release was not signed by the fee simple owner. Additionally, the mere inclusion of an exhibit and an

14

undeveloped argument are not sufficient to preserve an issue on appeal.  This is so where an issue is raised but not pursued.[6]

Therefore, we decline to consider Lee's new argument in support

---

[6] At the hearing on Lee's motion to alter the district court's judgment, the district court provided Lee with an opportunity to explain what she considered as the district court's misunderstanding of her argument. The following colloquy occurred:

> THE COURT: Now, let's turn to the next point that you want to reargue, which is that you want to reargue your position that the note holder had the power to agree to the creating [of] this easement.
>
> ATTORNEY CUMMINGS: I don't want to reargue anything, your Honor. I am not permitted to reargue.
>
> THE COURT: Right.
>
> ATTORNEY CUMMINGS: I just wanted to bring to your attention, and you just stated it on the record. I am satisfied.
>
> THE COURT: Well, I have stated it in the opinion.
>
> ATTORNEY CUMMINGS: Your Honor, as my client and I went over, she said, "he don't understand." I said, "I think he does." But . . . "
>
> THE COURT: Oh, I clearly do.
>
> ATTORNEY Cummings:  And when you stated it, your Honor, there goes my argument. I am going to sit down.

(Transcript of Motions Hearing at 9-10, <u>Lee v. Zom Clarendon, L.P.</u>, No.1:09cv402 (E.D. Va. Nov. 20, 2009).  Even at a hearing on her motion to alter the judgment, Lee did not press the argument she has crafted here.

15

of an express easement. She has not presented any exceptional circumstance necessitating appellate review of this issue and we find that no miscarriage of justice would result. Moreover, after having the benefit of oral argument and carefully reviewing the briefs, record, and controlling legal authorities, we conclude that the district court properly considered and rejected Lee's contention that either the trustee or note holder, independently or collectively, had any authority to create an express easement in the Woodward Deed of Partial Release.[7]

B.

Lee argues next that the district court erred by excluding her "three expert witnesses and nine expert reports" from its consideration of her summary judgment motion.

---

[7] Even if we were to accept Lee's invitation for this Court to view B.M. Hedrick as the grantee or beneficiary of the deed of partial release because he received the benefit of the transaction (or the re-granting of the property), this view would necessarily mean that the Trustees or the note holder would serve in the role as the grantor in the deed of partial release. Lee has conceded that the trustees lacked the authority to create an easement and the district court found, without specific challenge from Lee here, that the note holder did not have that authority either. Therefore, we submit that it would be inappropriate to consider the fee simple owner as a grantee or beneficiary in this instance. Moreover, upon these facts, and the lack of ambiguity in the language of the deed of partial release, there is no need to look outside of the deed of partial release, the document in which Lee asserts the reservation was made, for any intent of the parties.

(Appellant's Reply at 8). Lee contends that the reports included expert testimony that "analyze complicated instruments, many using obscure language and the effect of whether in ancient practice the parties did not always execute the deed in question." (Appellant's Brief at 39). She asserts that this information and the "effect of subsequent deeds in recordation practices during the depression and standards in the title industry" would have been helpful to the court in determining the effectiveness of the partial release. (Id.) Specifically, she argues that one of her experts, Kirk Foster, could have provided the court with a "modern example of a recorded easement" (id. at 40), which was "created in the same manner as the 1932 partial release transaction" which she contends established the reserved easement. (Id. at 39; Appellant's Reply at 8.) While Attorney Douglas Mackall's report "reli[ed] on subsequent deeds in the record that show that B.M. Hedrick ratified the reserved Right of Way" (Id.), Lee contends that this information is relevant to the issue of the creation of a valid easement. Zom contends that Lee has not presented any claim to this Court that the district court abused its discretion. Zom argues that the reports were properly excluded in that it is immaterial that the deed of partial release was in Zom's chain of title if the easement was not validly created.

17

District courts have "broad latitude in ruling on the admissibility of evidence, including expert opinion," and such rulings will not be overturned "absent an abuse of discretion." Bryte ex rel. Bryte v. Am. Household, Inc., 429 F.3d 469, 475 (4th Cir. 2005). "A district court abuses its discretion when it acts arbitrarily or irrationally, fails to consider judicially recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law." United States v. Delfino, 510 F.3d 468, 470 (4th Cir. 2007). However, even if a district court's evidentiary ruling constitutes an abuse of discretion, such a ruling "is reversible only if it affects a party's substantial rights." Schultz v. Capital Int'l Sec., Inc., 466 F.3d 298, 310 (4th Cir. 2006); accord Fed. R. Evid. 103(a). In making its evidentiary determinations, the trial court "exercises a gate keeping function to assess whether the proffered evidence is sufficiently reliable and relevant." Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999).

Federal Rule of Evidence 702 provides the focal point for determining the admissibility of expert testimony. Generally, expert testimony of "scientific, technical, or other specialized knowledge" is admissible if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Conversely, such testimony is

18

inadmissible if it does not aid the trier of fact. <u>United States v. Barile</u>, 286 F.3d 749, 760 (4th Cir. 2002). Whether an expert will assist the factfinder is a question the trial court has "wide discretion" to decide. <u>Mercado v. Austin Police Dep't</u>, 754 F.2d 1266, 1269 (5th Cir. 1985). This is true "particularly when the court sits as the trier of fact, for [it] is then in the best position to know whether expert testimony would help [it] understand the case." (<u>Id</u>.)

We conclude on the record in this case that the district court was well within its discretion to exclude Lee's expert reports. A review of the Foster and Douglas reports indicates that they opine on the very nature of the dispute in this matter, whether an easement can validly be created in a deed of partial release, who has the authority to create the easement in such an instrument (i.e., trustee or note holder) and whether the fee simple owner's signature is required. All of these issues involve pure questions of law which are well within the parameters reserved for the district court on a motion for summary judgment and are inappropriate subjects for expert testimony. The court simply had to look to the document purporting to create the conveyance and determine the authority of the parties to make its determination. "While expert witnesses may testify as to the ultimate matter at issue, Fed. R. Evid. 704(a), this refers to testimony on ultimate facts;

testimony on ultimate questions of law, i.e., legal opinions or conclusions, is not favored." Anderson v. Suiters, 499 F.3d 1228, 1237 (10th Cir. 2007) (citation omitted). Notably, there were no factual questions at issue. Indeed, Lee has not identified any before this Court. The expert reports did not opine on any archaic language that would have provided the court with pertinent information. The district court resolved the issue of whether the easement was validly created as a matter of law and on the basis of facts which were not in dispute by the parties. Upon a determination that the easement was not validly created, expert testimony on the proper boundaries of a search of Zom's chain of title became immaterial. Moreover, although the reports may have included information regarding property conveyances during the 1930's, the time during which the deed of partial release was made and while this information may have been helpful, the district court, as the arbiter on summary judgment motions, apparently found the testimony unnecessary. This Court is not positioned to alter such a determination. Further, Lee has failed to demonstrate an abuse of discretion or that a substantial right was affected by the court's evidentiary ruling. For these reasons, the exclusion of the expert reports supporting Lee's summary judgment motion is affirmed. See Adelman v. Baker, Watts & Co., 807 F.2d 359, 366 (4th Cir. 1986) (affirming the exclusion of testimony by expert witness which

20

included legal conclusions), *disapproved on other grounds* in Pinter v. Dahl, 486 U.S. 622 (1988).

C.

Finally, we turn to Lee's assertion that the district court erred in finding that she failed to establish that an easement exists by prescription for the benefit of the Reamy Property.

In Virginia, to establish a claim of easement by prescription, a claimant must prove that her use of the purported servient estate was (1) adverse, (2) under a claim of right, (3) exclusive, (4) continuous and uninterrupted and (5) with the knowledge and acquiescence of the owners of the servient estate. Hafner v. Hansen, 279 Va. 558, 563 (Va. 2010) (citations omitted). Additionally, there is a temporal requirement in that the claimant has to prove that this use occurred for a period of twenty years. (Id.) "A party claiming a prescriptive easement bears the burden of proving that easement by clear and convincing evidence." (Id.) "The essence of an adverse use is the intentional assertion of a claim hostile to the ownership right of another." Chaney v. Haynes, 250 Va. 155, 159, 458 S.E.2d 451, 453 (Va. 1995).

Further, "[w]here there has been an open, visible, continuous and unmolested use of a road across the land of

21

another for at least twenty years, the use will be presumed to be under claim of right, and places upon the owner of the servient estate the burden of rebutting this presumption by showing that the use was permissive, and not under claim of right." Johnson v. DeBusk Farm, Inc., 272 Va. 726, 730, 636 S.E.2d 388, 391 (Va. 2006) (quoting Rives v. Gooch, 157 Va. 661, 663, 162 S.E. 184, 184 (1932)); see also Pettus v. Keeling, 232 Va. 483, 485, 352 S.E.2d 321, 323-24 (1987).

As the Supreme Court of Virginia has oft said, where the use of a roadway, or in this case, driveway "ha[s] been in common with such use by the general public, the element of exclusiveness, requisite for a prescriptive right, would be negated. In such a case, the right of each user of the way is dependent upon the enjoyment of similar rights by others, and no private prescriptive rights will arise." Burks Bros. of Virginia, Inc. v. Jones, 232 Va. 238, 246, 349 S.E.2d 134, 139 (Va. 1986). (citation omitted). However, "prescriptive rights will arise where each user independently asserts his right to enjoy the right-of-way for himself, because such use is exclusive even though others assert similar rights for themselves, but rights asserted by users in common are dependent, not exclusive." (Id.) (citing Totten v. Stuart,143 Va. 201, 203-04, 129 S.E. 217, 218 (1925). The term "exclusive" was expounded upon by the Virginia Supreme Court in Totten.

22

The use [is] 'exclusive' when it is proprietary, not a use by the public generally, and is exercised under some claim which is independent of and does not depend for enjoyment upon similar rights by others. It is not necessary, however, that the claimant be the only one to enjoy the right of way, as other persons may acquire a prescriptive right to use it. When a way has been so used for a period of more than twenty years, the origin of the way not being shown, the bona fides of the claim of right is established and a presumption of a right to the use arises from the long acquiescence of the owner of the servient estate, and the burden is on him to rebut that presumption by showing permission or license from him or those under whom he claims.

Totten, 143 Va. at 203-204, 129 S.E. at 218 (citations omitted).

The district court found that the evidentiary record at the bench trial supported a finding that Lee's use of the driveway was continuous and uninterrupted and with the knowledge and acquiescence of the driveway's owners, but that she failed to show by clear and convincing evidence that her use was adverse, exclusive or under a claim of right. Additionally, the district court found that Lee could not satisfy the temporal requirement, contrary to Lee's assertion here on appeal.

In reaching this conclusion, the district court made fifteen (15) enumerated findings of fact.[8] The United States Supreme Court has instructed that "findings of fact of a

---

[8] During the bench trial, the district court received testimony from Lee, her daughter and son-in-law, Jeannie and Donald Williams, as to the driveway's use. Zom proffered the testimony of John Strother, the previous owner of the purported servient estate, from whom it acquired its property.

23

district court, especially when the judge has heard the witnesses *ore tenus* in open court, shall not be set aside unless clearly erroneous, with due regard being given to the opportunity of the trial court to judge the credibility of the witnesses." Anderson v. City of Bessemer City, N.C.*,* 470 U.S. 564 (1985). In Anderson, the Court reminded us that "a reviewing court [must not] reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently," 470 U.S. at 573; "appellate courts must constantly have in mind that their function is not to decide factual issues *de novo*," (id.); and "[w]here there are two permissible views of evidence, the factfinder's choice between them cannot be clearly erroneous[.]" (Id. at 574.)

Here, we must harmonize this deferential standard of review of factual findings, as set forth in Anderson, with the law. Our task is simplified by the parties. Before this Court, neither party has assigned any error to the district court's findings of fact with respect to Lee's prescriptive easement claim. (Appellant's Reply at 10; Appellee's Brief at 26, 31). Instead, they have each relied upon them in their dispute of the district court's conclusion of law. We have reviewed the record in this matter, and we adopt the factual findings of the district court as reflected herein as they are based on substantial evidence, are not clearly erroneous and are without

objection by the parties. Anderson, 470 U.S. 564 (1985); see also Mom n Pops, Inc. v. City of Charlotte, N.C., 162 F.3d 1155 (4th Cir. 1998) (unpublished table decision); Abex Corp. / Jetway Div. v. Controlled Sys., Inc., 983 F.2d 1055(4th Cir.1993)(unpublished table decision)(citing); Fed. R. Civ. P. 52(a)(6). For context of the discussion that follows, here are the enumerated district court findings:

1. Plaintiff is the owner of two adjoining parcels of real property in Arlington, Virginia. The first parcel consists of Clarendon Subdivision lots 238-240 and portions of lots 217 and 241. More familiarly, this property is located at the intersection of N. Irving Street and Washington Boulevard. The second parcel consists of portions of lots 217 and 241 of the Clarendon Subdivision, and bears the address 1122 N. Irving Street. This second parcel is described by the parties as the Reamy house. The putative easement runs alongside the northwest and southwest sides of the Reamy house, thus providing access to the rear of the Reamy house. Notably, the rear of the Reamy house is also accessible by passing through the structure or via a parking lot bordering the southeast side of the Reamy house. Plaintiff purchased these parcels in 1963.

2. The sole defendant is Zom Clarendon, L.P., a limited Delaware partnership authorized to do business in Virginia. Defendant owns the putative servient estate, which consists of Clarendon Subdivision lots 206-216, 242-247, and those portions of lots 217 and 241 that do not include the Reamy house. In 2006, defendant purchased this property, which is immediately adjacent to plaintiff's property, from the

25

family of Channing Strother. Defendant intends to build a mixed-use high rise with both residential units and retail space on these lots.

3. In 1956, plaintiff's husband and father-in-law, as lessors, opened a Chinese restaurant located at 3211 Washington Boulevard. The restaurant and the Reamy house are located on adjoining parcels of land. The restaurant, which faces Washington Boulevard, is also accessible from the rear through the driveway at issue on N. Irving Street. In 1956, plaintiff owned none of these properties.

4. Plaintiff began regularly visiting the restaurant in 1956 to eat dinner. Between 1956 and 1959, plaintiff did not observe any cars parked on the purported easement.

5. In 1959, plaintiff began working at the restaurant four to five days a week. Although the restaurant was located on Washington Boulevard, plaintiff entered the restaurant using a rear entrance. On occasion, plaintiff's husband, with plaintiff as a passenger in the car, was unable to reach the rear entrance because cars were parked on the driveway. Plaintiff's father-in-law would then ask the Reamy house's tenants to move their cars, which they did, allowing plaintiff and her husband to access the restaurant's rear entrance. Plaintiff worked at the restaurant until 1996.

6. On November 15, 1963, plaintiff's family purchased the Reamy house. Plaintiff's family believed that a survey given to them at the closing conveyed the right to use the driveway and that they nonetheless had an inherent right to use the driveway in light of the property's physical layout.

7.   In 1965, plaintiff's parents-in-law moved into the Reamy house's second story and resided there until 1979. During this period, plaintiff's parents-in-law would clear garbage, trash, leaves, and sometimes snow from the driveway. In addition, plaintiff's mother-in-law planted a garden on the driveway containing beans, mint, and leeks.

8.   Also in 1965, other tenants began to occupy the ground floor of the Reamy house. Specifically, the ground floor housed an antique store from 1965-1980, housed a bed frame store from 1980-1990, and was used by two carpenters around 1998 to store materials and tools. The antique store tenants parked on the purported easement from 1965-1980, and the bed frame store and carpenter tenants used the driveway to access the rear of the Reamy house from 1980-1990. In addition, visitors to the Reamy house—such as plaintiffs daughter, Jeannie Williams, and plaintiff's son-in-law, Donald Williams—sometimes parked on the driveway. In particular, Donald Williams used the driveway when he assisted plaintiff's husband in periodically repairing or repainting the Reamy house beginning in the late 1970s. Plaintiff did not receive any complaints or objections with respect to the use of the driveway in this manner.

9.   In 1979, plaintiff and her husband began maintaining the driveway and grew vegetables there. Furthermore, plaintiff and her husband would also park on the driveway. Twice a year, beginning at an unspecified time, plaintiff used the driveway for a Chinese ceremony in which she would spread rice and coins on the ground.

10. Also in 1979, the family of Channing Strother purchased the property currently owned by defendant and thus became the owners of record of the driveway-easement at issue. Channing Strother and his son, John Strother, opened a printing store on their property in 1979. Notably, the shop could only be reached via the driveway off N. Irving Street because the store did not front Washington Boulevard, and as such the Strothers and their customers regularly used the driveway to reach the printing store. In an effort to ensure that customers could find and access the printing store, which was set back from N. Irving Street, the Strothers maintained the driveway, including having it repaved at one point.

11. In 1990, Donald and Jeannie Williams opened a delicatessen named "Sam's Corner" on an adjoining parcel of land east of the Reamy house and restaurant. Since 1990, the ground floor of the Reamy house has been used to store materials related to the operation of Sam's Corner, and plaintiff and her family have used the driveway to access these materials.

12. The members of plaintiff's family were not the only people to use the driveway; rather, the driveway was regularly used by others to access buildings on both plaintiff's and defendant's lots.

13. Plaintiff's family and the Strothers had a neighborly, friendly relationship. At no time did they become entangled in a dispute or disagreement relating to the driveway's use. Plaintiff's family, particularly Donald Williams, saw and conversed with the Strothers on the driveway in a cordial manner. At no time did plaintiff's family represent to the

28

Strothers that they, plaintiff's family, had a right to use the driveway.

14. On at least one occasion, Donald Williams and John Strother discussed Williams's intention to use the driveway to facilitate repair of the Reamy house. Although Williams claims that he never asked the Strothers for permission to use the driveway, Strother testified more credibly that permission was sought and granted on this occasion. Whether Williams actually sought permission from Strother, or simply advised Strother of the driveway's use consistent with their neighborly relationship, is not a factual dispute that requires resolution here, as this fact is not dispositive of plaintiff's claim.

15. No witness testimony supports a factual finding that plaintiff's family used the driveway in a manner that interfered with the Strothers' use of the driveway. At most, Donald Williams asked Charming Strother at one point to move his car along the driveway so that maintenance could be performed on the Reamy house, and Strother obliged without incident. Williams's use of the driveway in this regard is consistent with the neighborly relationship between plaintiff's family and the Strothers.

Lee v. Zom Clarendon, L.P., 689 F. Supp. 2d 814 (E.D. Va. 2010).

With our canvas properly framed, we now consider Lee's argument for a prescriptive easement. The parties do not challenge the district court's determination that Lee's use of the purported easement was continuous and uninterrupted and with the knowledge and acquiescence of the driveway's owners. However, Lee asserts that she adequately demonstrated that her

29

use was (1) adverse, (2) under a claim of right, and (3) exclusive for the duration of the prescriptive period from 1963 to 1983 by clear and convincing evidence. Lee argues that the district court used the wrong legal definitions to determine that her use of the driveway was not "exclusive" and "adverse." She also argues that she was deserving of a rebuttable presumption of having a claim of right to the driveway and that the district court's findings support that her use was not permissive.

We disagree. Lee fails to show an exclusive use of the driveway necessary to establish an easement over Zom's land because the right of Lee and her family to use the driveway was dependent upon the similar use of Strother and the general public, his customers. The evidentiary record provides that Lee, her daughter and son-in-law used the driveway for parking. Additionally, from 1965-1990, commercial tenants leasing the ground floor of the Reamy House used the driveway to access the rear of the Reamy House. This use, of parking or driving across the easement, is consistent with the use of the general public who visited the businesses owned by the servient owner, the Strothers. There is no dispute that, in 1979, the Strothers operated a print shop business on their property which could only be accessed by their customers via the driveway because the store did not front Washington Boulevard. On these facts, Lee

30

cannot show a right to use the driveway independent of that use by Strother. Indeed, her use of the driveway is dependent upon the use of Strother and his customers. Lee also argues that her father-in-law maintained the cleanliness of the driveway during the fourteen year period of 1965-1979. Again, maintenance of the driveway is not inconsistent with the Strothers' actions. John Strother testified, and Donald Williams agreed, that Strother maintained the driveway, as well. Indeed, Strother and his father had the driveway repaved. Lee's assertions of use are common to that of Strother and are not readily distinguishable. Finally, Lee asserts that she used the driveway for a garden and, twice a year, for a Chinese ceremony in which she would spread rice and coins on the ground. While this use may have been unique to Lee, it is obvious that both neighbors used the driveway in common and this use does not rise to an independent assertion of a right to use the driveway.

Therefore, we agree with the well-reasoned opinion of the district court, Lee's claim of a prescriptive easement is fatally flawed in that she has not shown by clear and convincing evidence that her use of the driveway was exclusive.[9]

---

[9] Lee's contention that the district court used a colloquial, rather than legal definition of "exclusive," is wholly without merit. The district court applied Nelson v. Davis, 262 Va. 230, 546 S.E.2d 712 (Va. 2001), which is wholly (Continued)

31

Finally, Lee argues that she should have been given the benefit of the shifting presumption that she used the driveway adversely and under a claim of right. We disagree. Based on the foregoing, Lee has failed to show that her use of the driveway was unmolested or exclusive. Lacking such a demonstration, she is not entitled to any presumption, rebuttable or otherwise. This finding is consistent with the reasoned analysis of the district court.  Given the failure of evidence with respect to exclusivity, a finding on the remainder of the factors required to establish a prescriptive easement is not necessary.

IV.

For the foregoing reasons, we affirm the district court's judgment on Lee's claims for an express or prescriptive easement. Additionally, we find that the district court did not abuse its discretion in its decision to exclude Lee's expert reports.

AFFIRMED

---

consistent with the instruction the Supreme Court of Virginia provided in Totten.